UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CHRISTOPHER D. GRIFFITH and DAVID
SPECIALE, on behalf of themselves and all          Case No: 12-cv-1117 (PAC)
others similarly situated,

        Plaintiffs,

    v.

FORDHAM FINANCIAL MANAGEMENT,
INC. and WILLIAM BAQUET,

        Defendants.
--------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND FOR COURT FACILITATION OF NOTICE


Michael D. Palmer
Mathew D. Kadushin
Charles Joseph
JOSEPH & KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, NY 10279
(212) 688-5640

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT .......................................................................... 1

II.  FACTS ............................................................................................................... 2

III. LEGAL BACKGROUND ................................................................................... 3

    A.   STOCKBROKERS ARE NON-EXEMPT EMPLOYEES UNDER THE FLSA ....... 3

        1.   Stockbrokers Do Not Qualify For The Professional Or Administrative
Exemption ...................................................................................................... 4

            a.   As Stockbrokers Are Not Paid A Salary, They Are Not Covered By The
Professional Or Administrative Exemption ........................................ 5

        2.   Stockbrokers Are Not Exempt Outside Salespersons ................................ 6

        3.   Stockbrokers Do Not Qualify For The Commissioned Retail Salesman
Exemption ...................................................................................................... 7

        4.   Stockbrokers Are Employees, Not Exempt Independent Contractors ................. 8

IV. ARGUMENT ...................................................................................................... 11

    A.   THE FLSA COLLECTIVE ACTION SHOULD BE CONDITIONALLY
CERTIFIED AND NOTICE PROVIDED TO CURRENT AND
FORMER STOCKBROKERS .................................................................. 11

        1.   Sending Expedited Notice to "Similarly Situated" Employees Fulfills The
FLSA's Broad Remedial Purposes .............................................................. 12

        2.   The Standard For Conditional Certification And Notice Is Lenient ................... 13

        3.   The Underlying Merits Of The Case Are Immaterial To The Determination
Of Conditional Certification and Notice ..................................................... 15

        4.   Plaintiffs Have Made The Modest Factual Showing Required For
Conditional Certification .......................................................................... 15

    B.   THE PROPOSED NOTICE OF PENDENCY IS FAIR AND ADEQUATE ........... 18

    C.   NOTICE SHOULD BE SENT TO ALL STOCKBROKERS WHO WORKED
FOR THE DEFENDANTS WITHIN THE LAST SIX YEARS ......................... 19

**D. DISCOVERY OF NAMES, ADDRESSES, TELEPHONE NUMBERS, EMAILS, AND SOCIAL SECURITY NUMBERS IS PROPER AND NECESSARY .............. 19**

**E. THE PROPOSED NOTICE SHOULD BE POSTED IN A COMMON AREA WHERE STOCKBROKERS ARE LIKELY TO SEE IT ......................................... 20**

**IV. CONCLUSION ................................................................................................. 21**

# TABLE OF AUTHORITIES

## CASES:

*Alonso v. Uncle Jack's Steakhouse, Inc.*,
   648 F. Supp. 2d 484 (S.D.N.Y. 2009)...........................................................................11, 12

*Anglada v. Linens 'n Things, Inc.*,
   No. 06 Civ. 12901 (CM) (LMS), 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. Apr. 26, 2007),
   *adopted by*, 2007 U.S. Dist. LEXIS 38918 (S.D.N.Y. May 29, 2007)..................................13

*Anish v. Nat'l Sec. Corp.*,
   No. 10-80330-CIV, 2012 U.S. Dist. LEXIS 72987 (S.D. Fla. May 25, 2012) .....................17

*Ansoumana v. Gristede's Operating Corp.*,
   255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003) ..........................................................................8

*Avila v. Northport Car Wash*,
   774 F. Supp. 2d 450  (E.D.N.Y. 2011) ................................................................................19

*Bifulco v. Mortgage Zone, Inc.*,
   262 F.R.D. 209 (E.D.N.Y. 2009) .......................................................................................18

*Bilyou v. Dutchess Beer Distribs., Inc.*,
   300 F.3d 217 (2d Cir. 2002) ...............................................................................................4

*Braunstein v. Eastern Photographic Labs.*,
   600 F.2d 335 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979)...........................................12

*Brock v. Superior Care, Inc.*,
   840 F.2d 1054 (2d Cir.1988) ..........................................................................................8, 9

*Campos v. Evdoxia Zopounidis*,
   No. 3:09-cv-1138, 2011 U.S. Dist. LEXIS 78905 (D. Conn. July 20, 2011) ........................9

*Chao v. Vidtape, Inc.*,
   66 Fed. Appx. 261(2d Cir. 2003) ........................................................................................6

*Cohen v. Gerson Lehrman Group*,
   09 Civ. 4352 (PKC), 2010 U.S. Dist. LEXIS 1666 (S.D.N.Y. Jan. 6, 2010) .......................16

*Creighton v. Oppenheimer*,
   No. 06-CV-4607 (BSJ) (S.D.N.Y. Feb. 25, 2008) ...............................................................7

*Creighton v. Oppenheimer*,
 No. 06-4607(BSJ) (S.D.N.Y.) ............................................................................... 11

*Cruz v. Hook-SupeRx, L.L.C.*,
 09 Civ. 7717 (PAC), 2010 U.S. Dist. LEXIS 81021 (S.D.N.Y. Aug. 5, 2010)............... 13, 14

*Cuzco v. Orion Builders, Inc.*,
 477 F. Supp. 2d 628 (S.D.N.Y. 2007) ..................................................................... 15

*Damassia v. Duane Reade, Inc.*,
 No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 4, 2006) ....................... 16

*Davis v. Abercrombie & Fitch Co.*,
 No. 08 Civ. 1859 (PKC), 2008 U.S. Dist. LEXIS 86577 (S.D.N.Y. Oct 23, 2008)............... 15

*Dumitrescu v. Mr. Chow Enters.*,
 07 Civ. 3601 (PKL), 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008) ................... 13

*Fasanelli v. Heartland Brewery, Inc.*,
 516 F. Supp. 2d 317 (S.D.N.Y. 2007) ................................................................ 18, 20

*Foster v. Food Emporium*,
 99 Civ. 3860 (CM), 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000)...................... 13

*Gani v. Guardian Serv. Indus. Inc*,
 No. 10 Civ. 4433, 2011 U.S. Dist. LEXIS 4353, at *5 (S.D.N.Y. Jan. 13, 2011) ................. 13

*Gambino v. Harvard Prot. Servs. LLC*,
 No. 10 Civ. 0983 (PAC), 2011 U.S. Dist. LEXIS 2533 (S.D.N.Y. Jan. 11, 2011) .............. 19

*Gold v. New York Life Ins. Co.*,
 No. 09 Civ. 3210 (WHP), 2011 U.S. Dist. LEXIS 62095 (S.D.N.Y. May 19, 2011) ............. 7

*Goldberg v. Roberts*,
 291 F.2d 532 (9th Cir. 1961) ................................................................................. 8

*Halferty v. Pulse Drug Co., Inc.*,
 821 F.2d 261 (5th Cir. 1987) ................................................................................. 9

*Havey v. Homebound Mortg., Inc.*,
 547 F.3d 158 (2d Cir. 2008) ................................................................................. 5

*Hein v. PNC Fin. Servs. Group, Inc.*,
 511 F. Supp. 2d 563 (E.D. Pa. 2007) ..................................................................... 6

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165, 170 (1989) .......................................................................... 11, 12, 13

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
   239 F.R.D. 363 (S.D.N.Y. Jan 29, 2007) ......................................................... 1, 19

*In re Claim of Cohen*,
   112 A.D.2d 687 (3d Dept 1985), aff'd by 67 N.Y.2d 683 (1986) ......................................... 10

*In re RBC Dain Rauscher Overtime Litig.*,
   703 F. Supp. 2d 910 (D. Minn. 2010) ................................................................. 6

*Khalil v. Original Homestead Rest., Inc.*,
   No. 07 Civ. 695 (RJH), 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) ................ 16

*Klein v. Ryan Beck Holdings, Inc.*
   06Civ.3460(DAB) (S.D.N.Y.) .......................................................................... 11

*Klimchak v. Cardrona Inc.*,
   No. 09 Civ. 4311, 2011 U.S. Dist. LEXIS 30652  (E.D.N.Y. Mar. 24, 2011) ...................... 19

*Lee v. ABC Carpet & Home*,
   236 F.R.D. 193 (S.D.N.Y. 2006) ......................................................................... 1, 20

*Lee v. ABC Carpet & Homes*,
   No. 00 Civ. 0984 (DAB), 2008 U.S. Dist. LEXIS 38725 (S.D.N.Y. May 9, 2008).............. 18

*Lynch v. United Servs. Auto. Ass'n*,
   491 F. Supp. 2d 357 (S.D.N.Y. 2007)................................................................. 12

*Malloy v. Richard Fleischman & Assocs.*,
   No. 09-Civ-322 (CM),
   2009 U.S. Dist. LEXIS 51790 (S.D.N.Y. June 3, 2009) ..................................... 14, 15, 17, 20

*Mitchell v. Kentucky Finance Co., Inc.*,
   359 U.S. 290 (1959) ........................................................................................ 8

*Morris v. Lettire Constr., Corp.*,
   No. 12 Civ. 0043 (NRB),
   2012 U.S. Dist. LEXIS 134860 (S.D.N.Y. Sept. 18, 2012) ..................................... 14, 15, 20

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ............................................................................ 13

*Ofori v. Central Parking Sys.*,
   No. 06-CV-0128 (KAM), 2010 U.S. Dist. LEXIS 5018 (E.D.N.Y. Jan. 22, 2010) .............. 16

*Pastenak v. Maxim Group, LLC*,
No. 09Civ.5579(SHS) (S.D.N.Y) ........................................................ 19

*Pefanis v. Westway Diner*,
No. 08 Civ. 002 (DLC), 2008 U.S. Dist. LEXIS 81082 (S.D.N.Y. Oct. 8, 2008)................. 16

*Realite v. Ark Rests. Corp.*,
7 F. Supp. 2d 303 (S.D.N.Y. 1998) .................................................... 19

*Salomon v. Adderley Indus.*,
847 F. Supp. 2d 561 (S.D.N.Y. 2012) ................................................ 13, 14, 15, 19

*Schwerdtfeger v. Demarchelier Mgmt.*,
2011 U.S. Dist. LEXIS 60338, (S.D.N.Y. June 6, 2011) ...................................... 19

*Schwind v. EW & Assocs.*,
357 F. Supp. 2d 691 (S.D.N.Y. 2005) ................................................... 6

*Searson v. Concord Mortg. Corp.*,
No. CV 07-3909 (DRH)(ARL),
2009 U.S. Dist. LEXIS 88926 (E.D.N.Y. Aug. 31, 2009) .................................... 17

*Sexton v. Franklin First Fin., Ltd.*,
No 08-CV-04950 (JFB) (ARL), 2009 U.S. Dist. LEXIS 50526 (E.D.N.Y. June 16, 2009) .. 17

*Shajan v. Barolo*,
10 Civ. 1385 (CM), 2010 U.S. Dist. LEXIS 54581 (S.D.N.Y. June 2, 2010)...................... 15

*Sipas v. Sammy's Fishbox, Inc.*,
No. 05 Civ. 10319 (PAC), 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006)........... 16

*Takacs v. A.G. Edwards & Sons, Inc.*,
444 F. Supp. 2d 1100 (S.D. Cal. 2006) ................................................... 8

*Thompson v. World Alliance Fin. Corp*,
No. CV 08-4951, 2010 U.S. Dist. LEXIS 85912 (E.D.N.Y. Aug. 20, 2010 ) ...................... 17

*Torres v. Gristede's Operating Corp.*,
No. 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039
(S.D.N.Y. Sept. 28, 2006) (Crotty, J.) ........................................... 4, 5, 6

*Trinidad v. Breakaway Courier Sys.*,
05 Civ. 4116 (RWS), 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007) ..................... 13

*Vaughan v. Mortgage Source LLC*,
    No. CV 08-4737 (LDW) (AKT),
    2010 U.S. Dist. LEXIS 36615 (E.D.N.Y. Apr. 14, 2010) ................................................ 14, 17

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    767 F. Supp. 2d 445 (S.D.N.Y. 2011) ................................................................................. 14

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    No. 09 Civ. 1148 (LBS), 2010 U.S. Dist. LEXIS 58460 (S.D.N.Y. June 14, 2010)............. 20

*Willix v. Healthfirst, Inc.*,
    No. 07-CV-1143, 2009 U.S. Dist. LEXIS 114818 (E.D.N.Y. Dec. 3, 2009) ........................ 16

*Winfield v. Citibank, N.A.*,
    2012 U.S. Dist. LEXIS 16449 (S.D.N.Y. Jan. 27, 2012) ..................................................... 19

*Yeboah v. Central Parking Sys.*,
    No. 06-CV-0128, 2009 U.S. Dist. LEXIS 99990  (E.D.N.Y. Oct. 26, 2009) ........................ 16

*Young v. Cooper Cameron Corp.*,
    229 F.R.D. 50, 54 (S.D.N.Y. 2005) .................................................................................... 15

**STATUTES**:

29 U.S.C. § 203(e)(1) ....................................................................................................................... 9

29 U.S.C. § 203(g) ) ......................................................................................................................... 9

29 U.S.C. § 206 ................................................................................................................................. 7

29 U.S.C. § 207(a)(1) ....................................................................................................................... 3

29 U.S.C. § 207(i) ......................................................................................................................... 7, 8

29 U.S.C. § 213(a)(1) ....................................................................................................................... 6

29 U.S.C. § 216(b) .................................................................................................................... passim

29 U.S.C. § 255, .............................................................................................................................. 13

29 U.S.C. § 255(a) .......................................................................................................................... 19

29 U.S.C. § 256(b) .......................................................................................................................... 13

N.Y. Lab. L. § 198(3) ............................................................................................ 19

N.Y. Lab. L. § 663(3). ........................................................................................... 19

**REGULATIONS**:

29 C.F.R. §  541.200 ............................................................................................... 4

29 C.F.R. §  541.300 ............................................................................................... 4

29 C.F.R. § 541.500 ............................................................................................ 6, 7

29 C.F.R. § 541.502 ............................................................................................... 7

29 C.F.R. § 541.600 ............................................................................................... 5

29 C.F.R. § 541.602 ............................................................................................... 5

29 C.F.R. § 541.604(a) ........................................................................................... 5

29 C.F.R. § 778.107 ............................................................................................... 4

29 C.F.R. § 778.108 ............................................................................................... 4

29 C.F.R. § 778.117 ............................................................................................... 4

29 C.F.R. § 779.316 ............................................................................................... 7

29 C.F.R. § 779.317 ............................................................................................... 7

**ADMINISTRATIVE MATERIALS:**

U.S. Dep't of Labor Opinion Letter, 2006 DOLWH LEXIS 57 (Nov. 27, 2006) ......................... 6

U.S. DOL Interpretative Bulletin No. 6 (Dec. 7, 1938) ................................................. 8

Plaintiffs Christopher Griffith and David Speciale submit this memorandum in support of their motion to certify their FLSA minimum wage and overtime claims as a collective action pursuant to 29 U.S.C. § 216(b).

## I.   <u>PRELIMINARY STATEMENT</u> [1]

Plaintiffs were formerly employed as stockbrokers by defendants Fordham Financial Management ("Fordham") and William Baquet (together, "Defendants").  Plaintiffs allege that Defendants have engaged in a systemic practice of failing to properly compensate stockbrokers, including by misclassifying them as categorically exempt from federal overtime pay requirements.  Although Fordham stockbrokers consistently worked over forty hours per week, they are never paid overtime pay, in violation of the Fair Labor Standards Act ("FLSA"), New York Labor Law and the New York Code, Rules and Regulations.

It is well-settled that "[a]t this juncture -- also termed the 'notice stage' -- the court applies a 'a fairly lenient standard' and . . . typically grants 'conditional certification.'" *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. Jan 29, 2007) (internal quotation omitted). Plaintiffs need only make a minimal showing that they and the other members of the proposed collective action are "similarly situated."  *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).  Here, Plaintiffs' pleadings, declarations and evidence plainly demonstrate that Plaintiffs are similarly situated to the proposed collective action members.

---

[1] In support of their motion, Plaintiffs submit the following:  Declaration of Christopher Griffith, dated December 10, 2012 ("Griffith Decl."); Declaration of David Speciale, dated December 10, 2012 ("Speciale Decl."); and Declaration of Michael D. Palmer, dated December 14, 2012 ("Palmer Decl.") and attached exhibits.

By the instant motion, Plaintiffs respectfully request the Court for:

(1)     Conditional certification of a collective action of registered representatives possessing entry-level licenses[2] ("stockbrokers"), pursuant to the FLSA, 29 U.S.C. § 216(b);

(2)     Court facilitated notice of this action to all stockbrokers who worked for Defendants at any time since February 14, 2006, in the form of Palmer Decl., Ex. A, which includes a consent form (opt-in form) as authorized by the FLSA;

(3)     Production of names, mailing addresses, telephone numbers, alternate phone numbers and addresses, email address, and dates of employment for all stockbrokers employed during the last six years; and

(4)     Posting of the Notice, along with the consent forms, in a conspicuous location at Fordham offices.

## II.     FACTS

Fordham is a full-service brokerage firm which provides an array of financial services including, but not limited to, investment banking.  (Griffith Decl. ¶ 3; Speciale Decl. ¶ 3.)  Mr. Griffith worked as a stockbroker in Fordham's New York City office from approximately January 2008 until November 2011.  (Griffith Decl. ¶ 2.)  Mr. Speciale worked as a stockbroker in Fordham's New York City office from approximately 2003 through January 2010.  (Speciale Decl. ¶ 2.)

All Fordham stockbrokers have the same job duties and perform the same tasks.  (Griffith Decl. ¶¶ 6-7; Speciale Decl. ¶¶ 6-7.)    In general, they sell clients stocks and other financial products. (Griffith Decl. ¶ 6; Speciale Decl. ¶ 6.)  Stockbrokers are thoroughly controlled and

---

2     *E.g.*, Series 7 and Series 63.  Registered representatives with higher-level licenses which qualify them to be supervisors – for example, Series 24 – are not included in the collective definition.

2

supervised by Defendants in the performance of their jobs.  (*See* Griffith Decl. ¶¶ 8-25; Speciale Decl. ¶¶ 8-22.)

All Fordham stockbrokers are compensated in the same manner.  Aside from the first few months' of their employment[3], stockbrokers are paid solely by commission. (Griffith Decl. ¶ 28; Speciale Decl. ¶ 25.)  Under Fordham's commission structure, stockbrokers receive a monthly commission based on their sales of financial products and are paid no guaranteed minimum salary.  (Griffith Decl. ¶¶ 28-30; Speciale Decl. ¶¶ 25-27.)  If stockbrokers sold little or no financial products, they would receive little or no compensation; accordingly, stockbrokers sometimes earned less than the minimum wage.  (Griffith Decl. ¶¶ 29-30; Speciale Decl. ¶¶ 26-27; *See, e.g.* Palmer Decl., Ex. G (Griffith earned $10.00 in commissions for the month of December 2008, and after deductions, he owed Fordham $564 for the month.)

Fordham stockbrokers regularly work more than forty hours per week. (Griffith Decl. ¶¶ 10, 14-15, 31-32; Speciale Decl. ¶¶ 10, 13-14, 28-29.)  However, Defendants did not track the number of hours worked by stockbrokers and never paid them overtime for hours worked in excess of forty per week.  (Griffith Decl. ¶¶ 33-35; Speciale Decl. ¶¶ 30-32.)

### III.    LEGAL BACKGROUND

### A.    STOCKBROKERS ARE NON-EXEMPT EMPLOYEES UNDER THE FLSA.

Pursuant to the FLSA, unless an employee falls under a specifically delineated exemption, s/he must be paid at a rate of "not less than one and one-half times the regular rate at which he is employed" for any hours worked in excess of forty hours in a given week.  29 U.S.C.

---

[3]   During the first few months of Fordham stockbrokers' employment (when the stockbrokers have opened few – if any – new accounts), they are paid a small amount of money (approximately $1,200 per month).  (Griffith Decl. ¶ 27; Speciale Decl. ¶ 24.)   However, even this small amount is not guaranteed, and if a stockbroker failed to produce, Fordham could seek recovery of the money.  *Id.* After this initial period, stockbrokers' compensation is tied 100% to their commissions.  (Griffith Decl. ¶ 28; Speciale Decl. ¶ 25)

§ 207(a)(1).  The "regular rate" is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed . . . ."  29 C.F.R. § 778.108.[4]  "Commissions . . . are payments for hours worked and must be included in the regular rate.  This is true regardless of whether the commission is the sole source of the employee's compensation . . . ."  29 C.F.R. § 778.117.

In their Answer, Defendants raise four potential bases to find stockbrokers exempt under the FLSA:   (i) the outside sales exemption, (ii) the professional exemption, (iii) the administrative exemption, and (iv) that stockbrokers are independent contractors.  (Palmer Aff., Ex. C at 7 (Second Affirmative Defense).)  All exemptions are the employer's burden to prove and are narrowly construed against the employer.  *Bilyou v. Dutchess Beer Distribs., Inc.,* 300 F.3d 217, 222 (2d Cir. 2002).  As explained below, none of these – or any other – exemptions apply to Fordham stockbrokers.  Accordingly, the stockbrokers will ultimately be found to be non-exempt employees, entitled to overtime.

**1.     Stockbrokers Do Not Qualify For The Professional Or Administrative Exemption.**

Under the FLSA, the test to determine whether an employee qualifies for the administrative or executive exemption is two-pronged:  (1) salary and (2) primary duties.  *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039, at *19 (S.D.N.Y. Sept. 28, 2006) (Crotty, J.); 29 C.F.R. 541.200, 541.300.  If either prong is absent, the exemption does not apply.  *Torres*, 2006 U.S. Dist. LEXIS 74039, at *19, 33.

---

[4]     However, where this calculation of the regular rate falls below the minimum wage rate – for example, where a stockbroker earned little or no commissions for the month – the minimum wage is used as the regular rate.  *See* 29 C.F.R. § 778.107

###### a.   As Stockbrokers Are Not Paid A Salary, They Are Not Covered By The Professional Or Administrative Exemption.

"To qualify as an exempt . . . administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis at a rate of not less than $455 per week."  29 C.F.R. § 541.600.  "An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."   29 C.F.R. § 541.602.  *See also* 29 C.F.R. § 541.604(a) (to satisfy the salary basis requirement an employee must be "guaranteed at least $455 each week").

In other words, to satisfy the salary prong: (i) the employee must be "paid a fixed and predetermined amount" (ii) which is no less than a specified minimum level [currently, $455 per week[5]].  *Havey v. Homebound Mortg., Inc.,* 547 F.3d 158, 163-164 (2d Cir. 2008); *Torres*, 2006 U.S. Dist. LEXIS 74039, at *20-21 ("The salary test consists of two elements: a requirement that the exempt employee receive no less than a specified level of compensation, and a requirement that the employee's compensation be paid 'on a salary basis.'") (internal quotation omitted).

Accordingly, to show that the salary test is satisfied, Defendants would have to establish that stockbrokers are guaranteed to receive a predetermined, minimum amount.  After their initial few months of employment[6], stockbrokers are compensated solely by commissions and receive no guaranteed minimum salary or fixed, regular compensation.  Accordingly, the salary

---

[5]   29 C.F.R. § 541.600.

[6]   During the first few months' of their employment, stockbrokers are fronted a non-guaranteed amount totaling less $455 per week.  (Griffith Decl. ¶¶ 26-27; Speciale Decl. ¶¶ 23-24.)  As such, the salary test is not met during this initial period either.

test is not met for Fordham stockbrokers.  *See* Palmer Aff., Ex. D (U.S. Dep't of Labor Opinion

Letter, 2006 DOLWH LEXIS 57, at *19 (Nov. 27, 2006) (recognizing that a stockbroker could

only qualify for the administrative exemption if "the registered representative at all times is

guaranteed and receives not less than a predetermined amount that equals or exceeds the . . .

minimum weekly salary requirement for the administrative exemption"); *Schwind v. EW &*

*Assocs.,* 357 F. Supp. 2d 691, 703 (S.D.N.Y. 2005) ("the 'bona fide executive, administrative or

professional' exemption is unavailable to defendants because plaintiff was not paid on a salary

basis and received only commissions.").  *See also Chao v. Vidtape, Inc*., 66 Fed. Appx. 261, 264

(2d Cir. 2003) (where employee was paid a monthly salary of $719 plus commissions, only the

$719 – and not the commissions – was paid on a "salary basis.").[7]

Thus, stockbrokers cannot be found to qualify under the professional or administrative

exemptions.

### 2.  Stockbrokers Are Not Exempt Outside Salespersons.

Pursuant to the FLSA, an individual who works as an "outside salesman" is exempt from

overtime requirements.  *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.500.  An employee only

qualifies under the outsides salesman exemption if (1) his primary duty is making sales and (2)

he is "customarily and regularly engaged away from the employer's place or places of business

---

[7]   As recognized in the November 27, 2006 U.S. DOL Opinion Letter, where a stockbroker is paid a guaranteed minimum salary that meets or exceeds $455 per week has a primary duty other than sales, the stockbroker may be found exempt under the administrative exemption.  *See* 2006 DOLWH LEXIS 57 at *10-21. *See Hein v. PNC Fin. Servs. Group, Inc.,* 511 F. Supp. 2d 563, 570-572 (E.D. Pa. 2007) (same). *Cf. In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d 910, 927, 934-935 (D. Minn. 2010) (stockbroker who received a "guaranteed level of compensation" exceeding $455 met the salary test, but did not meet the primary duties test because there was evidence his primary duty was to make sales).  While Plaintiffs dispute that their primary duties meet the test under the administrative – or professional – exemption, an in depth examination of the primary duties test is unnecessary.  As the salary prong of the administrative –  and professional –  exemption is not met, "it is irrelevant that some individual plaintiffs or others similarly situated may have assumed duties that would otherwise make them exempt under the regulations."  *Torres*, 2006 U.S. Dist. LEXIS 74039, at *33.

in performing such primary duty."  29 C.F.R. § 541.500.  "[A]ny fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property."  29 C.F.R. § 541.502.

Stockbrokers customarily perform their work from Fordham's office.  (Griffith Decl. ¶ 9; Speciale Decl. ¶ 9.)   Indeed, Fordham requires stockbrokers to be in the office and working during set hours.  (*Id.*)  Accordingly, stockbrokers sell financial products from a "fixed site" and cannot be considered exempt outside salespersons.  *See Gold v. New York Life Ins. Co.*, No. 09 Civ. 3210 (WHP), 2011 U.S. Dist. LEXIS 62095, at *14 (S.D.N.Y. May 19, 2011) (recognizing that "securities brokers who worked as inside sales people" could not be found exempt as outside salesmen) (internal quotation omitted).

### 3.   Stockbrokers Do Not Qualify For the Commissioned Retail Salesman Exemption.[8]

While there is an exemption to the overtime rules for commissioned sales persons who work at a "retail or service establishment" [29 U.S.C. § 207(i)[9]], stockbrokers do not qualify for this exemption.  Regulations issued by the Department of Labor specifically provide that "stock or commodity brokers", "Securities dealers", and "Investment counseling firms" lack a "retail concept" [29 C.F.R. § 779.317] and thus do qualify as a "retail or service establishment."   29 C.F.R. § 779.316.  *See* Palmer Decl., Ex. E at 3 n.3 (*Creighton v. Oppenheimer*, No. 06-CV-4607

---

[8]     Although Defendants did not raise the commissioned retail salesman exemption as a defense in their Answer, a short discussion of the exemption is included for sake of completeness.

[9]     "No employer shall be deemed to have violated [the FLSA overtime provision] by employing any employee *at a retail or service establishment* for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under [29 U.S.C. §206] and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(i) (emphasis added).

(BSJ) (S.D.N.Y. Feb. 25, 2008) (recognizing that stockbrokers "are not exempt under any applicable exemption for inside sales in a retail establishment . . . because the United States Secretary of Labor has determined that the stock brokerage business lacks a retail concept."); Ex. F at ¶ 12 (U.S. DOL Interpretative Bulletin No. 6 (Dec. 7, 1938) ("stock brokers, security dealers . . . [and] investment counsel . . . are not, in the ordinary case, sufficiently similar in character to retail establishments to be considered 'service establishments' [under the FLSA.].")[10]; *Takacs*, 444 F. Supp. 2d at 1115-116 (stockbrokers do not qualify under the 29 U.S.C. § 207(i) exemption).

### 4. Stockbrokers Are Employees, Not Exempt Independent Contractors.

Defendants have always treated stockbrokers as employees; indeed, they withheld taxes from stockbrokers' earnings and reported the compensation earned by all stockbrokers on W-2 forms. (Griffith Decl. ¶ 37; Speciale Decl. ¶ 34; Palmer Decl. ¶ 4.) Nevertheless, Defendants apparently now assert that their stockbrokers are independent contractors in an attempt to avoid liability under the FLSA. However, "[a]n employer's characterization of an employee [as an independent contractor] is not controlling . . . ." *Ansoumana v. Gristede's Operating Corp*., 255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003) (holding that Plaintiffs can be employees even when "defendants did not keep the records mandated for employees by the FLSA and the New York Minimum Wage Act, did not pay minimum wages or overtime, did not withhold taxes or FICA from payroll, and issued IRS Forms 1099, rather than W-2s."). *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir.1988) ("[A]n employer's self-serving label of workers as independent contractors is not controlling. . . .").

---

[10] Congress adopted the Department of Labor's pre-1949 interpretations regarding "retail or service establishments" when they amended the FLSA in 1949. *Takacs v. A.G. Edwards & Sons, Inc*., 444 F. Supp. 2d 1100, 1115 (S.D. Cal. 2006) (citing, *Mitchell v. Kentucky Finance Co., Inc.*, 359, U.S. 290, 292 (1959) and *Goldberg v. Roberts*, 291 F.2d 532, 534 (9th Cir. 1961).

"The FLSA broadly defines an employee as 'any individual employed by an employer' and defines 'employ' as 'to suffer or permit to work.'"   *Campos v. Evdoxia Zopounidis*, No. 3:09-cv-1138, 2011 U.S. Dist. LEXIS 78905, at *9 (D. Conn. July 20, 2011) (quoting, 29 U.S.C. §§ 203(e)(1), (g)).   "The definition is necessarily a broad one in accordance with the remedial purposes of the Act."   *Brock*, 840 F.2d at 1058.

Courts utilize an "economic reality test" to determine whether an individual is an employee or independent contractor under FLSA.   *Id.*   The factors in the economic reality test include:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Id.* at 1058-1059.   The five listed factors are not exclusive; rather, the totality of circumstances should be considered.   *Brock*, 840 F.2d at 1059.   For example, the fact that Defendants treated Plaintiffs as employees for all purposes – including tax reporting – supports a finding that stockbrokers were employees.   *See id.* ("employer's admission that his workers are employees covered by the FLSA is highly probative."); *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 268 n.5 (5th Cir. 1987) (the fact that the plaintiff's income was reported on a W-2 supported the conclusion that she was an employee), *modified on other grounds on rehearing*, 826 F.2d 2 (1987).

As Defendants have always classified their stockbrokers as employees, it is hardly surprising that the economic realities of the relationship is one of employer and employees. Plaintiff and all stockbrokers were expected to work in the Fordham office, during set hours. (Griffith Decl. ¶ 9; Speciale Decl. ¶ 9)  Stockbrokers were required in the office at 8:30 a.m. to

attend a mandatory meetings and could be sent home and/or fined if they were late.  (Griffith Decl. ¶¶ 10-13; Speciale Decl. ¶¶ 10-12.)    Mondays through Thursdays, Fordham required stockbrokers to be in the office a minimum of ten hours.  (Griffith Decl. ¶ 14; Speciale Decl. ¶ 13.)  On Fridays, stockbrokers were permitted to leave the office at 4:00 p.m.  (Griffith Decl. ¶ 15; Speciale Decl. ¶ 14.)  Stockbrokers were not permitted to leave work early and would be subject to discipline or termination if they did so.  (Griffith Decl. ¶¶ 16-17; Speciale Decl. ¶ 15.)  Fordham stockbrokers were not permitted to work for other employers unless they were given prior written permission.  (Griffith Decl. ¶ 21; Speciale Decl. ¶ 18; *See also, e.g.* Palmer Decl., Ex. H at 1)  Stockbrokers were supervised and their trades were reviewed, processed and approved.  (Griffith Decl. ¶¶ 19-20; Speciale Decl. ¶¶ 16-17.)[11]  Fordham gave stockbrokers access to equipment to use in the performance of their jobs and could receive medical insurance through Fordham.  (Griffith Decl. ¶¶ 5, 36; Speciale Decl. ¶¶ 5, 33.)    Fordham required stockbrokers to be fingerprinted, have a background check and comply with Defendants' dress code.  (Griffith Decl. ¶¶ 22, 23; Speciale Decl. ¶¶ 19, 20; *See also* Palmer Decl., Exs. I, J.)  Further, restricted stockbrokers internet usage, instant messaging, advertising, and communications with the public.  (*See* Palmer Decl., Exs. K, L.)  All customer accounts opened by stockbrokers were considered property of Fordham, and Defendants retained the accounts when stockbrokers were terminated or voluntarily left the company.  (Griffith Decl. ¶ 25; Speciale Decl. ¶ 22.)  If Fordham did not think a stockbroker was bringing in sufficient business, Defendants would terminate the stockbroker.  (Griffith Decl. ¶ 24; Speciale Decl. ¶ 21.)

Accordingly, Plaintiffs are confident that at the summary judgment stage, Fordham stockbrokers will be found to be employees.  *See In re Claim of Cohen*, 112 A.D.2d 687 (3d

---

[11]    *See also, e.g.* Palmer Decl., Ex. H at 2 (recognizing that Fordham required careful and efficient work performance and would not tolerate insubordination.)

Dept 1985), *aff'd by* 67 N.Y.2d 683 (1986) (stockbroker was found to be an employee under New York state law where (i) his trades were reviewed and approved by the company, (ii) he was restricted from independent advertising without the company's approval, (iii) he was given equipment to perform his job, (iv) his work was supervised and reviewed by managers, and (v) he could be terminated for not generating sufficient business).

As Defendants had no legal basis for failing to pay Plaintiffs and other stockbrokers the overtime premium for hours worked in excess of forty per week, Defendants will be found liable for unpaid wages.[12]

## III.   ARGUMENT

### A.   THE FLSA COLLECTIVE ACTION SHOULD BE CONDITIONALLY CERTIFIED AND NOTICE PROVIDED TO CURRENT AND FORMER STOCKBROKERS.

The FLSA contemplates the maintenance of collective actions by similarly situated employees for an employer's violation of the overtime and minimum wage provisions.   29 U.S.C.A. § 216(b).   Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact," and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources."   *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 489 (S.D.N.Y. 2009).

---

[12]   There are several cases in this district where similar claims brought by stockbrokers were certified and settled on a class/collective basis.   *See, e.g. Creighton v. Oppenheimer*, No. 06-4607(BSJ) (S.D.N.Y.) ($2.38 million class/collective settlement approved on September 7, 2011); *Simel v. JP Morgan Chase*, No. 05-9750(GBD) (S.D.N.Y.) ($5 million class/collective settlement approved on January 7, 2011); *Klein v. Ryan Beck Holdings, Inc.* 06Civ.3460(DAB) (S.D.N.Y.) ($1.31 million class/collective settlement approved on June 29, 2010); *Pastenak v. Maxim Group, LLC*, No. 09Civ.5579(SHS) (S.D.N.Y) ($910,000 million class/collective settlement approved on March 8, 2010).   Moreover, in many of these cases the stockbrokers received a minimum salary, in addition to commissions; accordingly, the plaintiffs' right to overtime was much less certain than in the instant case.   *See supra* at 6 n.7.

The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments on claims arising from the same events and brought under the same laws.  *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007) ("Collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources.").

1.    **Sending Expedited Notice To "Similarly Situated" Employees Fulfills The FLSA's Broad Remedial Purposes.**

To protect proposed collective action members' rights and interests and to promote judicial economy and effective case management, the Court should approve notice to be distributed to current and former Fordham stockbrokers.  *See Hoffmann-La Roche*, 493 U.S. at 170-173 (ruling that timely notice is necessary to permit employees the opportunity to "make informed decisions about whether to participate" and assists the trial court in managing the joinder of potential class members); *Braunstein v. Eastern Photographic Labs.,* 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied,* 441 U.S. 944 (1979) (notice to putative members "comports with the broad remedial purpose of the Act, which should be given liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits."); *Alonso,* 648 F. Supp. 2d at 489 ("Proceeding in a collective action also allows plaintiffs 'the advantage of lower individual costs to vindicate rights by the pooling of resources.'  Yet, these benefits 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'") (internal citations omitted).

Further, expedited notice is critical in FLSA actions.  Unlike absent class members in a Rule 23 class action, potential class-member employees in a FLSA collective action must affirmatively consent (or "opt in") to be covered by the suit.  29 U.S.C. § 216(b).  Unless otherwise tolled, the statute of limitations continues to run on each individual's claim until he

files his written consent form with the Court.  29 U.S.C. §§ 255, 256(b).  To ensure that the rights protected by the FLSA, the Supreme Court has ruled that courts have broad authority to facilitate notice of the existence of the lawsuit to potential opt-in plaintiffs.  *Hoffmann-La Roche*, 493 U.S. at 170.  Notice to putative class members should be given as soon as possible, since, because of the statute of limitations, "potential plaintiffs may be eliminated as each day goes by."  *Foster v. Food Emporium,* No. 99 Civ. 3860 (CM), 2000 U.S. Dist. LEXIS 6053, at *5, n.1 (S.D.N.Y. Apr. 26, 2000).[13]  Thus, distribution of a notice of pendency alerting potential collective members of their right to opt-in to an FLSA collective action is crucial.

## 2.    The Standard For Conditional Certification And Notice Is Lenient.

In determining whether an FLSA collective action should be certified and notice provided to putative collective members "[c]ourts engage in a two step analysis[.]"  *Salomon v. Adderley Indus.*, 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012) (Crotty, J.) (citing, *Myers v. Hertz Corp.*, 624 F.3d 537, 554-555 (2d Cir. 2010))  "At the first step, known as the notice phase, courts utilize a lenient evidentiary standard in assessing whether the Plaintiff has presented sufficient evidence to demonstrate that a prospective class of member plaintiffs is similarly situated to the named Plaintiff."  *Anglada v. Linens 'n Things, Inc*., No. 06 Civ. 12901 (CM) (LMS), 2007 U.S. Dist. LEXIS 39105, at *11 (S.D.N.Y. Apr. 26, 2007), *adopted by,* 2007 U.S. Dist. LEXIS 38918

---

[13]   *See also Cruz v. Hook-SupeRx, L.L.C.*, No. 09 Civ. 7717 (PAC), 2010 U.S. Dist. LEXIS 81021, at *7 (S.D.N.Y. Aug. 5, 2010) (Crotty, J.) ("Employees must receive timely notice in order for the benefits of the [FLSA] collective action to accrue."); *Dumitrescu v. Mr. Chow Enters.*, No. 07 Civ. 3601 (PKL), 2008 U.S. Dist. LEXIS 49881, at *8 (S.D.N.Y. June 30, 2008) ("Indeed, the benefits of a [FLSA] collective action 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'") (citation omitted); *Trinidad v. Breakaway Courier Sys*., No. 05 Civ. 4116 (RWS), 2007 U.S. Dist. LEXIS 2914, at *7 (S.D.N.Y. Jan. 12, 2007) ("Notice to putative class members should be given as soon as possible since . . . 'potential plaintiffs may be eliminated as each day goes by.'") (citation omitted).

(S.D.N.Y. May 29, 2007).[14]  While a plaintiff "must offer 'substantial allegations' demonstrating a 'factual nexus' between the plaintiff and the potential opt-in plaintiffs[,] . . . [t]he plaintiff's burden at the first stage is 'very low.'"  *Morris v. Lettire Constr., Corp.*, No. 12 Civ. 0043 (NRB), 2012 U.S. Dist. LEXIS 134860, at *8-9 (S.D.N.Y. Sept. 18, 2012) (citations omitted). *See also Malloy v. Richard Fleischman & Assocs.*, No. 09-Civ-322 (CM), 2009 U.S. Dist. LEXIS 51790, at *5 (S.D.N.Y. June 3, 2009) ("At this juncture -- also termed the 'notice stage' -- the court . . . typically grants 'conditional certification.'") (internal quotation omitted).  The plaintiffs "have to make only a modest factual showing that they and other employees were victims of a common policy or plan." *Salomon*, 847 F. Supp. 2d at 564; *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 447 (S.D.N.Y. 2011) (same).

Under this lenient standard, a court will certify a collective action and order notice to potential collective members where "the plaintiffs satisfy the minimal burden of showing that the similarly situated requirement is met" based on the pleadings and declarations.  *Malloy*, 2009 U.S. Dist. LEXIS 51790 at *4-5 (internal quotations omitted); *Cruz*, 2010 U.S. Dist. LEXIS 81021, at *6 (same).  *See also Morris*, 2012 U.S. Dist LEXIS 134860, at *9 ("The plaintiff may adduce evidence through its own pleadings, affidavits, and declarations, including any hearsay statements contained therein.) (internal citation omitted); *Vaughan v. Mortgage Source LLC*, No. CV 08-4737 (LDW) (AKT), 2010 U.S. Dist. LEXIS 36615, at *10 (E.D.N.Y. Apr. 14, 2010) ("This determination is typically 'based on the pleadings, affidavits and declarations[.]'") (citation omitted); *Salomon*, 847 F. Supp. 2d at 563 ("courts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice.")

---

[14]   The second stage occurs after notice has been sent out, discovery completed, and the defendant has made a "decertification motion . . . challenging the propriety of the presence of one or more of the opt-in plaintiffs in the class." *Id.* at *12 n.3.

Unlike a Rule 23 class action, an FLSA § 216(b) collective action requires no "showing of numerosity, typicality, commonality and representativeness . . . as a pre-requisite to approval." *Malloy,* 2009 U.S. Dist. LEXIS 51790 at *6 (internal quotation omitted).

### 3.   The Underlying Merits Of The Case Are Immaterial To The Determination Of Conditional Certification And Notice.

Although Plaintiffs have made a robust showing that Defendants improperly misclassified stockbrokers as exempt under the FLSA, an in-depth analysis of the underlying merits is unnecessary and inappropriate at this time: "the court does 'not weigh the merits' of the plaintiff's underlying claims . . . [n]or does the court resolve factual disputes or evaluate credibility." *Morris*, 2012 U.S. Dist LEXIS 134860, at *9 (internal citation omitted). *See also Shajan v. Barolo*, No. 10 Civ. 1385 (CM), 2010 U.S. Dist. LEXIS 54581, at *3 (S.D.N.Y. June 2, 2010) ("Weighing of the merits is absolutely inappropriate."); *Cuzco v. Orion Builders, Inc*., 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007) (recognizing that merits questions – such as whether putative collective members are employees or independent contractors – should not be decided through a conditional certification motion.) "[T]he question for the Court is not 'whether there has been an actual violation of law but rather . . . whether the proposed plaintiffs are 'similarly situated' . . . with respect to their allegations that the law has been violated." *Davis v. Abercrombie & Fitch Co.*, No. 08 Civ. 1859 (PKC), 2008 U.S. Dist. LEXIS 86577, at *30, (S.D.N.Y. Oct 23, 2008) (quoting *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005)).

### 4.   Plaintiffs Have Made The Modest Factual Showing Required For Conditional Certification.

Far exceeding a "modest factual showing," Plaintiffs have submitted declarations and other evidence demonstrating that all stockbrokers were illegally classified as exempt under the FLSA and never paid overtime compensation when they worked in excess of forty hours per

week.  Thus, Plaintiffs easily have met the lenient standard for certification and notice.  *See, e.g.,*

*Pefanis v. Westway Diner,* No. 08 Civ. 002 (DLC), 2008 U.S. Dist. LEXIS 81082, at *3

(S.D.N.Y. Oct. 8, 2008) (certifying collective action based upon complaint and one affidavit);

*Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695 (RJH), 2007 U.S. Dist. LEXIS 70372,

at *3 (S.D.N.Y. Aug. 9, 2007) (certifying collective action based upon complaint and one

affidavit); *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319 (PAC), 2006 U.S. Dist. LEXIS

24318, at *8 (S.D.N.Y. Apr. 24, 2006) (Crotty, J.) (certifying collective action based upon

complaint and three affidavits).

The very nature of Plaintiffs' misclassification claim necessarily affects a group of

similarly situated employees.  All individuals who worked as Fordham stockbrokers performed

the same job duties, were compensated in the same manner and were misclassified as exempt

from FLSA overtime requirements, and are thus similarly situated.  *See Cohen v. Gerson*

*Lehrman Group, Inc*., 686 F. Supp. 2d 317, 330 (S.D.N.Y. 2010) ("[D]istrict courts have

routinely certified classes of employees challenging their classification as exempt, despite

arguments about 'individualized' differences in job responsibilities.'") (citation omitted).[15]

---

[15]  *See also Willix v. Healthfirst, Inc.*, No. 07-CV-1143, 2009 U.S. Dist. LEXIS 114818, at
*18 (E.D.N.Y. Dec. 3, 2009) ("Plaintiffs and the members of the proposed FLSA collective are
'similarly situated' within the meaning of § 216(b) because they performed essentially the same job
duties, were subject to the same or similar employment and compensation policies, and were all
classified as exempt from the overtime requirements of the FLSA"); *Yeboah v. Central Parking Sys.*,
No. 06-CV-0128 (KAM), 2009 U.S. Dist. LEXIS 99990, at *6 (E.D.N.Y. Oct. 26, 2009) ("[P]laintiffs
have sufficiently alleged that the group of CPNY assistant garage managers classified as 'exempt'
under the FLSA are similarly situated in that they allege that they are victims of a common scheme to
misclassify and deny overtime pay to certain assistant garage managers."), *reconsideration denied
sub nom., Ofori v. Central Parking Sys.,* 2010 U.S. Dist. LEXIS 5018 (E.D.N.Y. Jan. 22, 2010);
*Malloy,* 2009 U.S. Dist. LEXIS 51790, at *7-8 ("If the IT specialists have been improperly classified
as 'exempt,' then the named plaintiff has alleged a common wage, overtime and payroll practices that
violates the FLSA.  Having done so, he is entitled to proceed in a representative capacity . . . .");
*Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090, at *13-14
(S.D.N.Y. Oct. 4, 2006) (plaintiffs who were uniformly classified as exempt were similarly situated).

Indeed, courts frequently have certified collective actions in cases in which employees were paid on a commission only basis and classified as exempt under the FLSA. *See, e.g., Anish v. Nat'l Sec. Corp.,* No. 10-80330-CIV, 2012 U.S. Dist. LEXIS 72987, at *3, 9-12 (S.D. Fla. May 25, 2012) (certifying an FLSA collective action brought by stockbrokers who alleged they were paid pursuant to a "commission-based compensation policy, which did not account for actual wages worked" and were not paid overtime wages when they worked in excess of 40 hours per week); *Thompson v. World Alliance Fin. Corp,* No. CV 08-4951, 2010 U.S. Dist. LEXIS 85912, at *17-19 (E.D.N.Y. Aug. 20, 2010) (finding "Plaintiff has set forth a modest factual showing to demonstrate that loan officers . . . were subject to a common policy" where plaintiffs alleged they "regularly worked in excess of 40 hours per week," "were paid on a commission-only basis" and were not paid overtime); *Vaughan*, 2010 U.S. Dist. LEXIS 36615, at *11-12, 25   (granting collective certification of FLSA overtime claim where plaintiff alleged that "she and other similarly situated loan officers were paid on a commission basis only, 'which meant that [they were] paid only if and when [they] sold a loan'"); *Searson v. Concord Mortg. Corp*., No. CV 07-3909 (DRH)(ARL), 2009 U.S. Dist. LEXIS 88926, at *18 (E.D.N.Y. Aug. 31, 2009) (where plaintiff loan officers alleged that they were paid commissions only, the court found that "allegations of a company-wide policy of denying overtime and minimum pay to loan officers" was enough to show plaintiffs were similarly situated); *Sexton v. Franklin First Fin., Ltd*., No 08-CV-04950 (JFB) (ARL), 2009 U.S. Dist. LEXIS 50526, at *12 (E.D.N.Y. June 16, 2009) (granting 216(b) certification where "plaintiff alleges that the defendants have a common policy or practice to deny minimum and overtime wages to its loan officers, who have similar job duties, by improperly classifying them as exempt employees, paying them primarily based only on commission, and failing to maintain accurate time records of hours worked by employees");

17

*Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209 (E.D.N.Y. 2009) (granting 216(b) certification where plaintiff loan officers, who were paid commission only, alleged they worked more than forty hours per week without receiving overtime pay).

**B.    THE PROPOSED NOTICE OF PENDENCY IS FAIR AND ADEQUATE.**

Attached as Exhibit A to the Declaration of Michael D. Palmer is Plaintiffs' proposed Notice of Pendency. The proposed Notice explains Plaintiffs' claims, provides clear instructions on how to opt-in, and accurately states the prohibition against retaliation for participation in an FLSA action.

The Supreme Court specifically left the "content details of a proposed notice under §216(b) . . . to the broad discretion of the trial court." *Lee v. ABC Carpet & Homes*, No. 00 Civ. 0984 (DAB), 2008 U.S. Dist. LEXIS 38725, at *3-4 (S.D.N.Y. May 9, 2008). "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and ensure that putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007). The proposed Notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action and should be adopted.

**C.    NOTICE SHOULD BE SENT TO ALL STOCKBROKERS WHO WORKED FOR THE DEFENDANTS WITHIN THE LAST SIX YEARS.**

Plaintiffs and opt-in Plaintiffs have asserted claims under both the FLSA and New York Labor law. The statute of limitations under the FLSA is three years (two years for non-willful

violations)[16] while the statute of limitations for claims under New York law is six years.[17]   In

cases where employees have both timely FLSA and state law claims, courts in this Circuit have

deemed it appropriate to grant six-year rather than three-year notice periods.  *See Salomon*, 847

F. Supp. 2d at 566 ("'[S]everal courts in this Circuit have deemed it appropriate to grant six-year

rather than three-year notice periods' where plaintiffs assert claims under both the FLSA and

New York Labor Law."), *quoting*, *Winfield v. Citibank, N.A.*, 2012 U.S. Dist. LEXIS 16449, at

*35-36 (S.D.N.Y. Jan. 27, 2012).[18]   "Granting a six-year notice period 'may be relevant to a

subsequent determination as to whether a class should be certified under New York law,'

particularly where the FLSA notice explains that there may be claims arising under New York

state law that are governed by a six-year statute of limitations period."  *Salomon*, 847 F. Supp. 2d

at 566.  As the proposed notice describes the FLSA claims as well as the New York state law

claims – which have a six year statute of limitation – judicial economy supports the distribution

of notice of stockbrokers who worked for Defendants within the last six years.  *Id.*

## D.   DISCOVERY OF NAMES, ADDRESSES, TELEPHONE NUMBERS, EMAILS AND SOCIAL SECURITY NUMBERS IS PROPER AND NECESSARY.

It is appropriate for courts in collective actions to order the discovery of names and

contact information purposes of distributing the Notice of Pendency.  *See, e.g. Gambino v.*

*Harvard Prot. Servs. LLC*, No. 10 Civ. 0983 (PAC), 2011 U.S. Dist. LEXIS 2533, at *7

---

[16]   29 U.S.C. § 255(a).

[17]   N.Y. Lab. L. §§ 198(3), 663(3).

[18]   *See, e.g. Schwerdtfeger v. Demarchelier Mgmt.*, 2011 U.S. Dist. LEXIS 60338, at **19-20 (S.D.N.Y. June 6, 2011); *Klimchak v. Cardrona Inc.*, No. 09 Civ. 4311, 2011 U.S. Dist. LEXIS 30652,  at *22 (E.D.N.Y. Mar. 24, 2011); *Avila v. Northport Car Wash*, 774 F. Supp. 2d 450, 455-56 (E.D.N.Y. 2011); *Gani v. Guardian Serv. Indus. Inc.*, No. 10 Civ. 4433, 2011 U.S. Dist. LEXIS 4353, at *5 (S.D.N.Y. Jan. 13, 2011); *Iglesias-Mendoza*, 239 F.R.D. at 369; *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 308 n.4 (S.D.N.Y. 1998).

(S.D.N.Y. Jan. 11, 2011) (Crotty, J.); *Morris*, 2012 U.S. Dist LEXIS 134860, at *25; *Lynch*, 491 F. Supp. 2d. at 371;  *Malloy,* 2009 U.S. Dist. LEXIS 51790, at *11; *Lee*, 236 F.R.D. at 202; *Fasanelli*, 516 F. Supp. 2d at 323-24.

Plaintiffs therefore request that, in addition to entering an order granting conditional certification and approving Plaintiffs' proposed notice, the Court order Defendants to produce within ten days of its Order a computer-readable list of all stockbrokers who worked for Defendant at any point in the six years prior to Plaintiffs filing the Complaint with the following information: name, mailing address, alternate address (if any)[19], all known telephone numbers and email addresses, and dates of employment.

## E.      THE PROPOSED NOTICE SHOULD BE POSTED IN A COMMON AREA WHERE STOCKBROKERS ARE LIKELY TO SEE IT.

Finally, in order to best facilitate dissemination of the notice of the lawsuit to their employees, Defendant should be required to post a copy of the Proposed Notice, along with the consent forms, in a place at Fordham's offices where putative collective members are likely to see it and learn about their rights related to this lawsuit.  "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Whitehorn*, 767 F. Supp. 2d at 449 (citing cases).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court conditionally certify this action as a representative collective action pursuant to 29 U.S.C. § 216(b); authorize the distribution of the proposed Notice of Pendency to all stockbrokers who worked for Defendants at any time since February 14, 2006; order Defendants to produce a computer

---

[19]    As a brokerage firm, Defendants have access to their former stockbrokers current addresses through the FINRA Central Depository (CRD).  Accordingly, as part of the production, Defendants should be required to produce a list of stockbroker addresses obtained through the CRD.

readable data file containing stockbrokers' mailing addresses, telephone numbers, alternate phone numbers and addresses, email addresses, and dates of employment to permit the distribution of Notice to stockbrokers; and order Defendants to post the notice, along with the consent (opt-in) forms, at Fordham's offices in a place where stockbrokers are likely to see it.

Dated:   New York, New York                    Respectfully submitted,
             December 14, 2012

                                                          _/s/ Michael D. Palmer_____
                                                          Michael D. Palmer
                                                          Matthew D. Kadushin
                                                          Charles Joseph
                                                          JOSEPH & KIRSCHENBAUM LLP
                                                          233 Broadway, 5th Floor
                                                          New York, NY 10279
                                                          (212) 688-5640
                                                          (212) 688-2548 (fax)

                                                          *Attorneys for Plaintiffs, putative collective
                                                          action members and putative class*