```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
CHRISTOPHER D. GRIFFITH and DAVID            :
SPECIALE, on behalf of themselves and all others :
similarly situated,                          :
                                             :
              Plaintiffs,                    :
                                             :
       -against-                             :
                                             :   12 Civ. 1117 (PAC)
FORDHAM FINANCIAL MANAGEMENT, INC.           :
and WILLIAM BAQUET,                          :
                                             :   OPINION & ORDER
              Defendants                     :
------------------------------------------------------------ x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 22, 2013
```

HONORABLE PAUL A. CROTTY, United States District Judge:

On February 14, 2012, plaintiffs Christopher D. Griffith ("Griffith") and David Speciale ("Speciale") filed a complaint against Fordham Financial Management, Inc. ("Fordham"), their former employer, and William Baquet, Fordham's president and chief executive officer, alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiffs claim that they were not paid minimum wage, they were not paid time and a half for work in excess of forty hours per week, they were not paid in a timely manner in accordance with the terms of their employment, and that Defendants made improper deductions from their wages. On December 14, 2012, Griffith and Speciale moved for conditional certification of their FLSA collective action. For the reasons stated below, Plaintiff's motion is granted.

## BACKGROUND

Fordham is a broker-dealer of securities licensed by the Financial Industry Regulatory Authority. (Baquet Decl. ¶ 2.) Baquet joined Fordham in May, 1997, and currently serves as its president and chief executive officer. (Id.) Speciale joined Fordham 2003 and worked in its

1

New York office until January, 2010. (Speciale Decl. ¶ 2.) Griffith joined the firm's New York office in January, 2008, where he worked until November, 2011. (Griffith Decl. ¶ 2.) Both Griffith and Speciale began as trainees or "cold-callers" before becoming stockbrokers for the rest of their time at Fordham. (See Griffith Decl. ¶¶ 2, 27; Speciale Decl. ¶¶ 2, 24.)

Fordham required its stockbrokers to be licensed, but there was no requirement that such employees have any specialized training or education. (Griffith Decl. ¶ 4; Speciale Decl. ¶ 4.) They were required to be in the office by 8:30 a.m for a mandatory meeting and could be fined or sent home for tardiness, both of which happened to Griffith. (Griffith Decl. ¶¶ 10-13, 23; Griffith Depo. at 84, 129-130; Speciale Decl. ¶¶ 10-12, 20; Speciale Depo. at 39, 54-55, 57-58, 67-68.) Their workday entailed a minimum of ten hours in the office on Monday through Thursday and seven and a half hours on Friday, though Fordham "suggested" that they work longer hours. (Griffith Decl. ¶¶ 14-15; Speciale Decl. ¶¶ 13-14; Speciale Depo. at 16, 69-70.) As happened to Griffith, they would also be fined if they left work early. (Griffith Decl. ¶ 16; Griffith Depo. at 131, 134-35.) Stockbrokers regularly worked at least fifty hours per week. (Griffith ¶¶ 31-32; Speciale ¶¶ 28-29.)

During their first few months of employment, Fordham paid trainees approximately $300 per week, though it reserved the right to recover a portion of that money if a stockbroker left before generating sufficient revenue for the firm. (Griffith Decl. ¶ 27; Speciale Decl. ¶ 24.) Any new customers accounts opened by stockbrokers were the property of Fordham, and, if a stockbroker left or was terminated, Fordham would retain the account. (Griffith Decl. ¶ 25; Speciale Decl. ¶22; Speciale Depo. at 38-39.) After working for several months or opening thirty new accounts, trainees became stockbrokers and were paid based on commissions, with no guarantee that they would earn at or above the minimum wage. (Griffith Decl. ¶¶ 28-30;

2

Speciale Decl. ¶¶ 25-27; Speciale Depo. at 26.)  Nor did stockbrokers receive overtime wages for hours worked in excess of forty per week.  (Griffith Decl. ¶¶ 33-34; Speciale ¶¶ 30-31.) Fordham also deducted a variety of expenses from their paychecks.  (See, e.g. Palmer Reply Decl. Ex. C.)

## DISCUSSION

### I. Legal Standard

Section 216(b) of the FLSA allows an employee to "assert claims on behalf of other 'similarly situated employees.'"  Myers v. Hertz Corp., 624 F.3d 537, 542 (2d Cir. 2010). Similarly situated employees are required to "opt in" by filing a written consent to become part of the FLSA collective action and to be bound by the judgment.  See id.  Courts have discretion to "facilitate notice to potential plaintiffs to inform them of the pendency of an action and of their opportunity to opt in as represented plaintiffs."  Jason v. Falcon Data Com, Inc., No. 09 Civ. 3990, 2011 WL 2837488, at *4 (E.D.N.Y. July 18, 2011).

"The Second Circuit has adopted a two-step analysis for deciding whether to certify a collective action under the FLSA."  Trawinski v. KPMG LLP, No. 11 Civ. 2978. 2012 WL 6758059, at *2 (S.D.N.Y. Dec. 21, 2012).  In the first stage of analysis, a court determines whether notice should be sent to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs, "thus issuing a 'conditional certification' of the collective action."  Winfield, 843 F. Supp. 2d at 402.  Plaintiffs' burden at this stage is minimal; they need only make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  Myers, 624 F.3d at 555.  Unlike the more stringent Rule 23 requirements, "[a]t the initial notice stage, plaintiffs satisfy their 'minimal burden' by demonstrating that other employees are similarly situated with regard to their

3

positions, job requirements, compensation scheme, and whether they received overtime pay." Trawinski, 2012 WL 6758059, at *2.

In the second stage of analysis, following discovery, a court determines whether "the 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Id. If the plaintiffs are not similarly situated, then the collective action may be "de-certified" and "the opt-in plaintiffs claims may be dismissed without prejudice." Id.

**II.   Analysis**

Griffith and Speciale seek to represent all registered stockbrokers employed by Fordham since February 14, 2009. See 29 U.S.C. § 255(a). Though Defendants contend that some portion of the employees referred to by Plaintiffs as stockbrokers were actually trainees, or "cold-callers," that is of no moment for purposes of certification. (See Baquet Decl. ¶ 12; Baquet Decl. Ex. J; but see Henderson Depo. at 63-64; Baquet Depo. at 16-21.) Assuming Defendants are correct, it would mean that the trainees are ineligible to be members of the putative collective action, but it would not impact the Plaintiffs' ability to bring such an action.

All Fordham stockbrokers had the same job requirements and duties. Although they did not need a college degree, Fordham stockbrokers had to have Series 7 and Series 63 licenses (Henderson Depo. at 55) and to undergo significant on-the-job training as a "cold-caller," during which time they worked for an established stockbroker. (Henderson Depo. at 60.) As stockbrokers, their daily activities included researching and pitching potential investments, executing trades, maintaining contact with existing clients and cold-calling potential clients. (Griffith Decl. ¶ 7; Griffith Depo. at 52-53; Speciale Decl. ¶ 7; Speciale Depo. at 20-21.) These tasks were all in service of their primary duty: selling financial products to investors. (Griffith

4

Decl. ¶ 6; Griffith Depo. at 121; Speciale Decl. ¶ 6; Baquet Depo. at 35; Henderson Depo. at 67.) In David Mamet's memorable phrase, their job was as simple as ABC: "always be closing." Glengarry Glen Ross (New Line Cinema 1992).

Fordham stockbrokers are compensated according to a common scheme and did not receive overtime pay. Their pay is based on commissions receive from stock transactions for their clients, which are split with Fordham. (Griffith Depo. at 60, 70-71; Henderson Depo. at 57-58; Speciale Depo. at 46.) If stockbrokers do not bring in sufficient business, there is no guarantee that they w earn the minimum wage, or any wage whatsoever. (Henderson Depo. at 58-59.) Though stockbrokers are required to work set hours, there is no relationship between their hours and their compensation. (Griffith Depo. at 96, 105, 111-12, 137; Henderson Depo. at 70-71.) Fordham also deducts a number of expenses from the commissions earned by stockbrokers, including various types of fees, postage, healthcare costs, and costs for purchasing leads on potential clients and the use of assistants. (Griffith Depo. at 71, 82, 88; Speciale Depo. at 47.)

Defendants have submitted contravening evidence, but "the two-stage certification process 'exists to help *develop* the factual record, not put an end to an action on an incomplete one.'" Trawinski, 2012 WL 6758059, at *4 (quoting Pippins v. KPMG LLP, No. 11 Civ. 377, 2012 WL 19379, at *12 (S.D.N.Y. Jan. 3, 2012)). Defendants' declarations, whose authors have not been deposed, must be discounted to the extent that they simply contradict facts asserted by Plaintiffs in their declarations and depositions. See Morris v. Lettire Const. Corp., 896 F. Supp. 2d 265, 272 (S.D.N.Y. 2012); Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 407 n.6 (S.D.N.Y. 2012). The same is true of Defendants' handbook, which purports to contradict certain of Plaintiff's assertions. (See, e.g., Baquet Ex. E at 7 (stockbrokers "are not required to

5

work set hours").) An abstract statement of policy does little to contradict the assertions made by Plaintiffs about Fordham's policies in practice, particularly given that it is unclear whether all Fordham employees even received the handbook. (See Griffith Depo. at 94.)

Next, Defendants assert that Plaintiffs are not similarly situated to one another, or to the putative members of the collective, because they worked dissimilar hours and their wages fell at various points along a wide-ranging spectrum.[1] (Def. Opp'n at 17-21.) "The relevant issue here, however, 'is not whether Plaintiffs and potential opt-in plaintiffs were identical in all respects, but rather whether they were subjected to a common policy.'" Salomon v. Adderley Indus., Inc., 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012) (quoting Raniere v. Citigroup, Inc., 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011)). Defendants "will have an opportunity to argue that individual inquiries predominate over common issues, based upon the discovery, at the second phase" of the collective certification process, but "a fact intensive inquiry is inappropriate at the notice stage." Id.

Finally, Defendants raise a number of merits arguments as to why Plaintiffs' claims will fail. Specifically, they argue that both Griffith and Speciale actually earned more than the minimum wage; that they are not the intended beneficiaries of the FLSA's protections, see Christopher v. SmithKline Beecham Corp., 132 S.Ct. 2156, 2173 (2012) ("Petitioners – each of whom earned an average of more than $70,000 per year and spent between 10 and 20 hours outside normal business hours each week performing work . . . – are hardly the kind of employees that the FLSA was intended to protect"); and that, as independent contractors, stockbrokers at Fordham are exempt from the FLSA. These arguments are premature. See

---

[1] Defendants also argue that Griffith and Speciale are not similarly situated because Griffith was employed pursuant to a written agreement and but Speciale was not. The record suggests otherwise. Speciale testified to having signed an employment agreement when he was hired (Speciale Depo. at 24), and, although Fordham has been unable to locate Speciale's contract (Henderson Depo. at 92), it has not produced any evidence suggesting that it did not exist.

Cunningham v. Elec. Data Sys. Corp., 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) ("the court does not . . . decide substantive issues going to the ultimate merits" and "should not weigh the merits of the underlying claims" at the conditional certification stage).

Griffith and Speciale have satisfied their "minimal burden" of making a modest factual showing that they and other employees were victims of a common policy or plan. Trawinski, 2012 WL 6758059, at *2. Plaintiffs' motion for conditional certification is granted.

Although the statute of limitations for FLSA claims is shorter than that for NYLL claims, where "[t]here are a number of employees with both timely FLSA and state law claims, . . . several courts in this Circuit have deemed it appropriate to grant six-year rather than three-year notice periods." Winfield, 843 F. Supp. 2d at 410-11 (collecting cases). "Accordingly, it is in the interest of judicial economy to provide notice covering both the three-year FLSA claims and the six-year [NYLL] claims." Salomon, 847 F. Supp. 2d at 566.

Plaintiffs' motion to compel production of the names, dates of employment, mailing addresses, telephone numbers, and email addresses for stockbrokers employed by Fordham within the six-year period prior to this suit is granted. Once such contact information has been received, Plaintiffs may then notify all potential opt-in plaintiffs of this litigation using their proposed notice (see Palmer Ex. A), to which Defendants have not objected. Further, Defendants are also ordered to post a copy of the notice, along with consent forms, in conspicuous locations in Fordham's New York office, as well as any other offices in which Fordham employs stockbrokers who are compensated based only on commission. See Whitehorn v. Wolfgang Rests., Inc., 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion to conditionally certify

the collective action under the FLSA. Defendants are hereby ordered to provide Plaintiffs with the contact information for all potential opt-in plaintiffs, as specified above, and to post a copy of Plaintiffs' proposed notice in Fordham's office. The Clerk of Court is directed to terminate the motion at docket number 13.

Dated: New York, New York
       May 22, 2013

SO ORDERED

PAUL A. CROTTY
United States District Judge