**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**CHRISTOPHER D. GRIFFITH and DAVID**
**SPECIALE, on behalf of themselves and all**      Index No: 12-cv-1117 (PAC)
**others similarly situated,**

          **Plaintiffs,**

    **v.**

**FORDHAM FINANCIAL MANAGEMENT,**
**INC. and WILLIAM BAQUET,**

        **Defendants.**
-----------------------------------------------------------x

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND TO DECERTIFY THE FLSA COLLECTIVE

JOSEPH & KIRSCHENBAUM LLP
D. Maimon Kirschenbaum
Denise A. Schulman
32 Broadway, Suite 601
New York, NY 10004
212-688-5640
212-688-2548 (fax)

*Attorneys for Named Plaintiffs and Opt-In Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. i

I.      PRELIMINARY STATEMENT .......................................................................... 1

II.     STATEMENT OF FACTS ................................................................................... 1

III.    ARGUMENT ........................................................................................................ 2

   A.    Defendants' Summary Judgment Motion Should Be Denied ......................... 2

      i.    All Plaintiffs timely responded to Defendants' Notices to Admit .............. 2

      ii.   Plaintiffs were employees under the FLSA and New York Labor Law ...... 3

         a. FLSA ............................................................................................................ 3

            1.  Control ................................................................................................ 4

            2.  Opportunity for profit or loss ............................................................ 8

            3.  Degree of skill required ..................................................................... 10

            4.  Permanence or duration of the working relationship ....................... 11

            5.  Extent to which the work is an integral part of the employer's business ......... 11

            6.  Additional factors .............................................................................. 11

         b. New York law .............................................................................................. 12

            1.  Plaintiffs did not work at their own convenience and were required to adhere to a minimum schedule set by Defendants ........................... 13

            2.  Plaintiffs were not free to engage in other employment ................... 13

            3.  Plaintiffs were on Defendants' payroll and could participate in Defendants' benefits programs .......................................................... 13

            4.  Overall control .................................................................................. 14

      iii.  All Plaintiffs worked overtime .................................................................. 14

      iv.   All Plaintiffs have minimum wage claims ................................................. 14

      v.    Statutes of limitations ............................................................................... 15

         c. Defendants' FLSA violations were willful ................................................. 15

         d. All Named and Opt-In Plaintiffs have timely NYLL claims ...................... 17

      vi.   The Opt-In Plaintiffs have asserted NYLL claims .................................... 18

   B.    The FLSA Collective Should Not Be Decertified ........................................ 21

IV.     CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) ...................................17,20

*Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184 (S.D.N.Y. 2003).........11

*Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078,
    2007 U.S. Dist. LEXIS 19634 (S.D.N.Y. Feb. 27, 2007)....................................21,25

*Berrios v. Nicholas Zito Racing Stables, Inc.*, 849 F. Supp. 2d 372 (E.D.N.Y. 2012).....16

*Beyah v. Coughlin*, 789 F.2d 986 (2d Cir. 1986)...............................................................2

*Bobbitt v. Broadband Interactive, Inc.*, No. 11 CV 2855,
    2013 U.S. Dist. LEXIS 150854 (M.D. Fla. Oct. 21, 2013) ................................4

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988) ...........................................3,10,12

*Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193 (2003) ......................................................13

*Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281 (S.D.N.Y. 2002)...........................................17

*Dole v. Snell*, 875 F.2d 802 (10th Cir. 1989)....................................................................9,11

*Doty v. Elias*, 733 F.2d 720 (5th Cir. 1984).....................................................................11

*Foman v. Davis*, 371 U.S. 178 (1962) ..............................................................................20

*Gardner v. Western Beef Props., Inc.*, No. 07 CV 2345,
    2013 U.S. Dist. LEXIS 56511 (E.D.N.Y. Mar. 25, 2013)....................................21,25

*Gayle v. Harry's Nurses Registry, Inc.*, No. CV-07-4672,
    2009 U.S. Dist. LEXIS 17768 (E.D.N.Y. Mar. 9, 2009).....................................10

*Griffith v. Fordham Fin. Mgmt., Inc.*, No. 12 Civ. 1117,
    2015 U.S. Dist. LEXIS 30869 (S.D.N.Y. Mar. 22, 2015) ...................................14,22

*Griffith v. Fordham Fin. Mgmt., Inc.*, No. 12 Civ. 1117,
    2013 U.S. Dist. LEXIS 72909 (S.D.N.Y. May 22, 2013) ...................................18

*Halferty v. Pulse Drug Co.*, 821 F.2d 261 (5th Cir. 1987) ..............................................12

*Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013) ......................13

*Hernandez v. NJK Contractors, Inc.*, No. 09 CV 4812,
    2015 U.S. Dist. LEXIS 57568 (E.D.N.Y. May 1, 2015) ......................................18

*In re Worldcom Secs. Litig.*, 496 F.3d 245 (2d Cir. 2007).................................................17

*Karic v. Major Automotivs Cos., Inc.*, 992 F. Supp. 2d 196 (E.D.N.Y. 2014) ................15

*Kassner v. 2nd Ave. Deli., Inc.*, 496 F.3d 229 (2d Cir. 2007) ...........................................19,20

*Kuebel v. Black & Decker, Inc.*, 643 F.3d 352 (2d Cir. 2011).........................................16

*Lewis v. ASAP Land Express, Inc.*, 554 F. Supp. 2d 1217 (D. Kan. 2008) .....................11

*Lincoln v. Potter*, 418 F. Supp. 2d 443 (S.D.N.Y. 2006).................................................19

*Lopez v. Silverman*, 14 F. Supp. 2d 405 (S.D.N.Y. 1998) ...............................................8,11

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) .............................2

*McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364 (S.D.N.Y. 2014).......................21,24,25

*Myers v. Hertz Corp.*, 624 F.2d 537 (2d Cir. 2010).........................................................21

*Mitchell v. Tenney*, 650 F. Supp. 703 (N.D. Ill. 1986) ...................................................7

*O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567 (6th Cir. 2009)..............................21,24

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000)..................................19

*Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091,
    2013 U.S. Dist. LEXIS 35808 (S.D.N.Y. Feb. 28, 2013)....................................15

*Reich v. S. New Eng. Telecoms. Corp.*, 121 F.3d 58 (2d Cir. 1997)................................14

*Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093 (9th Cir. 2014) .....................................4

*Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308 (11th Cir. 2013)...................................4,7,8

*Schwind v. EW & Assocs.*, 357 F. Supp. 2d 691 (S.D.N.Y. 2005) ..................................5,9

*Slayman v. FedEx Ground Package Sys.*, 765 F.3d 1033 (9th Cir. 2014)......................6,7

*Swinney v. AMcomm Telecomms., Inc.*, 30 F. Supp. 3d 629 (E.D. Mich. 2014) .............4

*Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447 (S.D.N.Y. 2008)................16,17

*United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir. 1960) ............... 15

*Vasquez v. Ranieri Cheese Corp.*, No. 07 CV 464,
    2010 U.S. Dist. LEXIS 29431 (E.D.N.Y. Mar. 26, 2010) .................................... 17

*Zaitzeff v. Peregrine Fin. Group, Inc.*, No. 08 C 4053,
    2010 U.S. Dist. LEXIS 9703 (N.D. Ill. Feb. 1, 2010) ......................................... 7

**Statutes, Rules, and Regulations**

29 U.S.C. § 206 ........................................................................................................ 15

29 U.S.C. § 216 ....................................................................................................... 21,22

29 U.S.C. § 255 ........................................................................................................ 16

29 U.S.C. § 256 ........................................................................................................ 16

Fed. R. Civ. P. 15 ................................................................................................... 19,20

Fed. R. Civ. P. 16 ................................................................................................... 19,20

Fed. R. Civ. P. 23 ..................................................................................................... 21

Fed. R. Civ. P. 30 ..................................................................................................... 17

Fed. R. Civ. P. 36 .................................................................................................... 2,18

Fed. R. Civ. P. 56 ...................................................................................................... 2

Local Civil Rule 6.3 ................................................................................................... 2

Local Civil Rule 56.1 .................................................................................................. 1

NASD Rule 1021 ...................................................................................................... 12

NASD Rule 1022 ...................................................................................................... 12

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.115 ................................................. 15

N.Y. Lab. L. § 198 .................................................................................................... 18

N.Y. Lab. L. § 663 .................................................................................................... 18

**Other Authorities**

U.S. Dep't of Labor Admin. Interpretation No. 2015-1 (July 15, 2015).........................3

## I.  PRELIMINARY STATEMENT

The record in this case is rife with factual disputes about matters central to determining whether Named Plaintiffs Christopher Griffith and David Speciale (collectively, the "Named Plaintiffs") and Opt-In Plaintiffs Ricardo Francois, Alonzo Adams, Paul Calabrese, and Mack Miller (collectively, the "Opt-In Plaintiffs," and together with the Named Plaintiffs, referred to herein as the Plaintiffs") were employees or independent contractors of Defendants Fordham Financial Management, Inc. ("Fordham") and William Baquet (collectively, Defendants").[1] These disputes include key matters such as the amount of control and supervision Defendants exercised over Plaintiffs.  Similarly, there are factual disputes regarding Plaintiffs' hours worked. These disputes preclude summary judgment on Plaintiffs' minimum wage and overtime claims.

The FLSA collective should not be decertified.  Plaintiffs are similarly situated because (1) they were subject to the same, centralized policies, which included extensive rules governing significant details of their work; (2) no individualized defenses would render the six-person collective unmanageable; (3) deciding Plaintiffs' claims individually would unduly burden the parties and the Court.  As set forth below, Defendants' motion should be denied in full.

## II.  STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to their Counter-Statement of Material Fact Pursuant to Local Civil Rule 56.1 ("Pls.' 56.1 Counter").

---

[1] With this memorandum of law, Plaintiffs submit the declarations of Denise A. Schulman, Christopher Griffith, David Speciale, Alonzo Adams, Ricardo Francois, Mack Miller, Paul Calabrese, and Ron McClintock and exhibits thereto.  All declarations are referred to herein as "Last Name Decl.," and all exhibits are referred to as "Last Name Ex. __."  Plaintiffs also refer herein to exhibits submitted by Defendants as "Declarant's Last Name Ex. __."

## III. ARGUMENT

### A.  Defendants' Summary Judgment Motion Should Be Denied

Summary judgment is warranted only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The party seeking summary judgment bears the burden of establishing that no genuine dispute as to a material fact exists[.]"  *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir. 1986).  A court deciding a motion for summary judgment "must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment[.]"  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007).

#### i.      All Plaintiffs timely responded to Defendants' Notices to Admit

All Plaintiffs timely responded to Defendants' Notices to Admit.  Defendants served their First Sets of Notices to Admit on each Plaintiff on May 1, 2015.  (Pls. 56.1 Counter ¶ 418.)  On May 7, 2015, Defendants served Revised First Sets of Notices to Admit on Christopher Griffith and Mack Miller, which superseded the May 1, 2015 Notices, and Second Sets of Notices to Admit on each Plaintiff.  (*Id*. at ¶¶ 419, 420.)  Therefore, Plaintiffs Griffith's and Miller's responses to the Revised First Sets of Notices to Admit and all Plaintiffs' responses to the Second Sets of Notices to Admit would ordinarily be due to be served 30 days after May 7, 2015, or June 6, 2015.  Fed. R. Civ. P. 36(a)(3).  However, because June 6, 2015 was a Saturday (Pls.' 56.1 Counter ¶ 422), the time to respond to the Notices to Admit served on May 7, 2015 was extended to Monday, June 8, 2015.  Local Civ. R. 6.3.  Accordingly, the following papers were timely served on Defendants on Monday, June 8, 2015 via U.S. mail: Christopher Griffith's and Mack Miller's responses to Defendants' Revised First Sets of Notices to Admit and all Plaintiffs' (except for Daniel DeKleine) responses to Defendants' Second Sets of Notices to Admit.  (Pls.'

2

56.1 Counter ¶ 423.)  Therefore, Defendants contention that certain facts should be deemed admitted because Plaintiffs failed to respond to Notices to Admit is meritless.[2]

### ii.   Plaintiffs were employees under the FLSA and New York Labor Law

#### a.   FLSA

To decide whether an individual is an employee or an independent contractor under the FLSA, a court applies the economic reality test.  This involves considering the totality of the circumstances, including but not limited to the following factors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-1059 (2d Cir. 1988).  "Since the test concerns the totality of the circumstances, any relevant evidence may be considered, and mechanical application of the test is to be avoided."  *Id*. at 1059.  "The ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves."  *Id*.  As the United States Department of Labor recently explained in an Administrator's Interpretation, "most workers are employees under the FLSA's broad definition[] . . . of employment . . . .as 'to suffer or permit to work[.]'"  U.S. Dep't of Labor Admin. Interpretation No. 2015-1 at 15 (July 15, 2015) ("Admin. Interpretation No. 2015-1").

Here, other than reciting the factors of the economic reality test, Defendants engage in little analysis of the test.  As set forth below, reviewing the record in the light most favorable to

---

[2] For example, all Plaintiffs to whom the propositions were posed in Notices to Admit denied that (1) their NYLL claims were time barred; (2) they earned more than the NYLL minimum wage; and (3) they earned more than the FLSA minimum wage.  (Pls.' 56.1 Counter. ¶ 424.)  Nonetheless, Defendants listed these legal conclusions as undisputed "facts" in their 56.1 statement.  (Defs.' 56.1 Statement ¶¶ 55, 56, 58, 59, 61, 62, 64, 66, 68.)

Plaintiffs, every factor of the economic reality test weighs in favor of finding Plaintiffs to be employees. To the extent that Defendants dispute Plaintiffs' factual contentions, those disputes cannot be resolved on summary judgment, and Defendants' motion must be denied.

## 1. Control

Defendants fail to show as a matter of law that they did not control Plaintiffs. On the contrary, this factor weighs strongly in favor of finding Plaintiffs to be employees. Defendants exercised control over Plaintiffs' schedules. Defendants set a minimum schedule to which Plaintiffs had to adhere. (Pls.' 56.1 Counter ¶¶ 79, 358-59.) Plaintiffs were subject to discipline for failing to adhere to the minimum schedule.[3] (*Id.* at ¶¶ 360-65.) For example, Defendants conducted a daily mandatory meeting, and stockbrokers were disciplined for missing or arriving late to the meetings. (*Id.* at ¶¶ 359-363.) This weighs in favor of finding Plaintiffs to be employees. *See Swinney v. AMcomm Telecomms., Inc.*, 30 F. Supp. 3d 629, 639 (E.D. Mich. 2014) (that defendant set arrival time and penalized tardiness indicates control over putative class); *Bobbitt v. Broadband Interactive, Inc.*, No. 11 CV 2855, 2013 U.S. Dist. LEXIS 150854, at *7-8 (M.D. Fla. Oct. 21, 2013) (denying summary judgment where the parties disputed, *inter alia*, whether the defendant set the arrival time for the putative employees and punished putative employees for tardiness); *see also Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1097-1098, 1102 (9th Cir. 2014) (that defendant required drivers to report to work at 6:00 a.m. or 6:30 a.m. indicated employee status); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1313 (11th Cir. 2013) (that plaintiffs were required to report to facility by set time indicated employee status).

To be sure, Plaintiffs' primary responsibility was to sell and trade stocks. Every aspect of this had to be approved by Defendants. Every trade that Plaintiffs made had to be approved by

---

[3] That Plaintiffs generally worked more than the minimum schedule and thus worked different hours from each other does not affect the control analysis. Defendants controlled Plaintiffs' schedules by setting a floor below which Plaintiffs could not go without punishment.

Defendants.  (Pls.' 56.1 Counter at ¶ 389.)  Every new account that Plaintiffs opened had to be approved by Defendants.  (*Id*.)  While Plaintiffs could negotiate their commissions with their customers, Defendants imposed a minimum commission on all transactions, and Defendants had to approve all commission rates.  (*Id*. at ¶¶ 94, 193, 367, 389.)  Defendants also dictated how commissions were split between Plaintiffs and Fordham.  (*Id*. at ¶ 366.)  Thus, Defendants exercised control over Plaintiffs' day to day activities and their ability to generate income.

Most of Fordham's business came from private placements, essentially, stocks sold only by Fordham.  (*Id*. at ¶ 385.)  Fordham directed stockbrokers to sell private placements before other stocks.  (*Id*. at ¶ 386.)  Most of the time, Fordham had a private placement that it was promoting.  (*Id*. at ¶ 387.)  Defendants gave Plaintiffs lists of recommended stocks, in addition to the private placements.  (*Id*. at ¶ 384.)  Defendants also had the power to bar Plaintiffs from selling certain securities.  (*Id*. at ¶ 388.)  Beyond this, the discretion Plaintiffs exercised in recommending stocks to customers does not indicate that Plaintiffs were independent contractors in light of the overall control exercised by Defendants.  *See Schwind v. EW & Assocs.*, 357 F. Supp. 2d 691, 701 (S.D.N.Y. 2005) (control weighed in favor of employee status where "[a]lthough plaintiff exercised discretion and independent judgment in . . . his job, he did consult with [the company's owner] about his daily schedule and work with her in completing his job").

Even Plaintiffs' sales efforts were conducted under Defendants' strict supervision. Plaintiffs could only use advertising and marketing materials generated by Defendants.  (Pls.' 56.1 Counter ¶¶ 376-78.)  In fact, Plaintiffs were not even allowed to identify their relationship with Fordham on social media.  (Adams Ex. 3, 2476; Griffith Ex. 3, 2009.)  Plaintiffs' phone calls were monitored by Defendants, and Defendants reviewed every written communication that Plaintiffs made or received.  (Pls.' 56.1 Counter ¶¶ 378-380, 382.)  Fordham intervened with

customer issues that the company identified by monitoring Plaintiffs' communications. (*Id.* at ¶ 379.) Stockbrokers were also expected to make 500 phone calls per day. (*Id.* at ¶ 368.)

Plaintiffs were subject to significant daily supervision by Defendants. Defendants' Written Supervisory Policies & Procedures ("WSPs") state that "[u]pon hire, each [stockbroker] will be assigned to a Principal responsible for supervising the activities of that particular representative." (*Id.* at ¶ 355.) The WSPs further provide, "It must be emphasized that, being a small firm, many of our processes and supervisory functions are carried out on a daily basis and the Firm is able to closely monitor the activities of its employees." (*Id.* at ¶ 356.) To be sure, Fordham manager Charles Giordano, Sr. regularly walked around the floor to make sure stockbrokers were working. He questioned them about their work, asking what they were doing, how many calls they had made, and how many new accounts they had gotten. (*Id.*)

In addition, Defendants required Plaintiffs to work from Defendants' office. (*Id.* at ¶ 357.) Defendants imposed a dress code, and Plaintiffs were disciplined if they did not comply with it. (*Id.* at ¶¶ 401-404.) *See Slayman v. FedEx Ground Package Sys.*, 765 F.3d 1033, 1042-43 (9th Cir. 2014) (dress code and appearance requirements constitute control). Defendants required stockbrokers to include the name of an e-mail's recipient at the top of the e-mail. (Pls.' 56.1 Counter ¶ 381.) Defendants required Plaintiffs to keep contemporaneous notes of their phone calls, which Defendants periodically reviewed. (*Id.* at ¶ 369.)

Defendants contend that some of the control they exercised was the result of complying with legal regulation. However, they have not and cannot explain why control exercised pursuant to regulations is less indicative of employee status than the same type of control exercised in the absence of regulations. As the Department of Labor Administrator explained:

> Some employers assert that the control that they exercise over workers is due to the nature of their business, regulatory requirements, or the desire to ensure that

> their customers are satisfied.  However, control exercised over a worker, even for
> any or all of those reasons, still indicates that the worker is an employee.

Admin. Interpretation No. 2015-1 at 14.  Thus, the pertinent question is not *why* a putative

employer exercised control over putative employees, but merely *whether* it did so.  *Scantland*,

721 F.3d at 1316 ("The economic reality inquiry requires us to examine the nature and degree of

the alleged employer's control, not why the alleged employer exercised such control.  Business

needs cannot immunize employers from the FLSA's requirements.  If the nature of a business

requires a company to exert control over workers to the extent that Knight has allegedly done,

then that company must hire employees, not independent contractors.").  Thus, to the extent that

Defendants exercised control over Plaintiffs in order to comply with regulations, that control is

indicative of employee status.  *See Zaitzeff v. Peregrine Fin. Group, Inc.*, No. 08 C 4053, 2010

U.S. Dist. LEXIS 9703 (N.D. Ill. Feb. 1, 2010) (defendant's monitoring of plaintiff "to ensure

compliance with applicable laws and regulations" weighs in favor of employee status under

Illinois law, which defines "employee" more narrowly than the FLSA); *Mitchell v. Tenney*, 650

F. Supp. 703, 707 (N.D. Ill. 1986) (denying defendants' motion for summary judgment on

commodities broker's independent contractor status under Title VII where "[t]he federal

regulatory scheme which governs the activities of [plaintiff and defendant] imposes a

considerable amount of mutual dependence").

Of course, Defendants clearly controlled Plaintiffs beyond the level of control required to

comply with regulations.  For example, no regulations required Defendants to impose minimum

work hours, a minimum commission, or a dress code, to require stockbrokers to include the name

of an e-mail recipient at the top of an e-mail, or to set a goal for stockbrokers to make 500 calls

per day, all of which are indicative of employee status.  *E.g.*, *Slayman*, 765 F.3d at 1042-43;

*Scantland*, 721 F.3d at 1313.  Thus, the substantial control Defendants exercised over Plaintiffs weighs strongly in favor of finding them to be employees.

## 2.  Opportunity for profit or loss

Plaintiffs had little opportunity for profit or loss in the ways relevant to the economic reality test.  Admin. Interpretation No. 2015-1 at 7 ("In considering whether a worker has an opportunity for profit or loss, the focus is whether the worker's managerial skill can affect his or her profit or loss.")  Significantly, Plaintiffs could not and did not work for anyone other than Defendants, a characteristic of employees rather than independent contractors, who are in business for themselves.  (*Id*. at ¶¶ 391-92; *see also* Baquet Exs. B & C ¶ 3 ("Employee shall devote his full business time, efforts, energies and abilities to faithfully and diligently serve and promote the Company's business and best interests[.]").)  To be sure, Plaintiffs were prohibited in engaging in any outside business activities without Defendants' approval.  (Pls.' 56.1 Counter ¶ 391.)  Similarly, Plaintiffs could not sell outside of Defendants' business channels without Defendants' approval.  If such approval were granted, Plaintiffs' sales would be subject to the same supervision as if they were selling within Defendants' business channels.[4]  (*Id*. at ¶ 393.)  In fact, Plaintiffs exclusively worked for and sold through Fordham.  (*Id*. at ¶ 394.)  Moreover, Plaintiffs had to be affiliated with Fordham (or another broker-dealer) and thus subject to the level of supervision detailed *supra* in order to engage in the business of selling stock.  *See infra* Section III.A.ii.a.6.  Thus, as a matter of economic reality Plaintiffs were economically dependent on Defendants and did not, as independent contractors do, have the opportunity to

---

[4] It is immaterial that FINRA rules required Plaintiffs to get Fordham's permission to engage in outside business activities or trade securities outside of Fordham's ordinary business channels.  These rules sharply curtailed Plaintiffs' opportunity for profit or loss and rendered them economically dependent on Defendants.  The fact of this dependence – and not the reason for it – is what matters under the economic reality test. *See Lopez v. Silverman*, 14 F. Supp. 2d 405 (S.D.N.Y. 1998) (applying the economic reality test determine whether an entity was a joint employer and noting that the reasons for economic dependence "are largely irrelevant").

profit by offering their services to a variety of customers.  *See Schwind*, 357 F. Supp. 2d at 701 ("[B]ecause [plaintiff] worked only for [defendant], he was precluded from other income.").

"A worker's decision to hire others, purchase materials and equipment, advertise, rent space, and manage time tables may reflect managerial skills that will affect his or her opportunity for profit or loss beyond a current job."  Admin. Interpretation No. 2015-1 at 7.  Plaintiffs, however, could not hire employees, advertise freely, create their own marketing materials, or rent office space.  (Pls.' 56.1 Counter ¶¶ 349, 357, 376-78, 396.)

Although Plaintiffs were paid, at least in part, by commissions, under the facts of this case this does not strongly indicate an ability for profit (and certainly none for loss).  Defendants had significant control over the commissions Plaintiffs charged, and Defendants dictated how commissions were split between Plaintiffs and Fordham.  (*Id*. at ¶ 366-67, 389.)

In evaluating this factor, the Court should also consider the comparative investments of Defendants and Plaintiffs.  *Dole v. Snell*, 875 F.2d 802, 810-811 (10th Cir. 1989).  "As courts have noted, the 'investment,' which must be considered as a factor [in the economic reality test] is the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself."  *Id*. at 810.  Here, Defendants made substantial investments in their business.  Among other things, they secured office space, furnished that space, provided employees (including stockbrokers) with computers, had a number of employees (not including stockbrokers), paid for telephone and internet service.  (Pls.' 56.1 Counter ¶¶ 348-49.)  Plaintiffs' comparative investments, *i.e.*, purchasing leads and perhaps subscribing to some publications for research purposes, are minimal in relation to Defendants' expenditures.  (*Id*. at ¶ 350.) Accordingly, this factor weighs in favor of finding Plaintiffs to be employees. *Schwind*, 357 F.

Supp. 2d at 701 (finding that this factor indicated employee status where plaintiff worked on commission but did not invest significantly in the business and worked only for defendant).

### 3. Degree of skill required

"A worker's business skills, judgment, and initiative, *not his or her technical skills*, will aid in determining whether the worker is economically independent."  Admin. Interpretation No. 2015-1 at 10 (emphasis added).  As the Second Circuit has recognized, "the fact that workers are skilled is not itself indicative of independent contractor status."  *Superior Care*, 840 F.2d at 1060.  To be sure, a worker's licensure is not itself indicative of independent contractor status, and it is beyond doubt that many licensed professionals, such as nurses, attorneys, and employees, are properly classified as employees, not independent contractors.  *E.g.*, *Gayle v. Harry's Nurses Registry, Inc.*, No. CV-07-4672, 2009 U.S. Dist. LEXIS 17768, at *24-28 (E.D.N.Y. Mar. 9, 2009) (finding a licensed nurse to be an employee).  Thus, the fact that Plaintiffs held entry level Series 7 and 63 licenses is irrelevant to this analysis.

Plaintiffs did not and could not deploy the business skills, judgment, and initiative characteristic of independent contractors in business for themselves.  Although they exercised limited discretion with respect to obtaining leads and recommending stocks, their business activities were highly controlled by Defendants.  Defendants pushed Plaintiffs to recommend particular stocks and had ultimate control over approving clients, trades, and commissions (including a minimum commission).  (Pls.' 56.1 Counter ¶ 384-390.)  They monitored Plaintiffs' communications with customers, and Plaintiffs could not create their own marketing or advertising materials.  (*Id*. at ¶¶ 376-380, 382.)  These strict limits sharply curtailed Plaintiffs' independence.  As a result, this factor weighs in favor of finding Plaintiffs to be employees.

#### 4.   Permanence or duration of the working relationship

"Permanency or indefiniteness in the worker's relationship with the employer suggests that the worker is an employee."  Admin. Interpretation No. 2015-1 at 12.  "'Independent contractors' often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas 'employees' usually work for only one employer and such relationship is continuous and of indefinite duration."  *Dole*, 875 F.2d at 811.  Here, Plaintiffs worked for Defendants on an at will basis, which indicates employee status.  (Pls.' 56.1 Counter ¶ 345.)  *Dole*, 875 F.2d at 811; *see also Doty v. Elias*, 733 F.2d 720, 723 (5th Cir. 1984).  While some Plaintiffs worked for Defendants for many years and others for a few months, in all cases they worked exclusively for Defendants for an indefinite period.  (Pls.' 56.1 Counter ¶ 392.)  *Lewis v. ASAP Land Express, Inc.*, 554 F. Supp. 2d 1217, 1225 (D. Kan. 2008) (noting that short employment period does not indicate independent contractor status where worker was hired to work continuously and indefinitely); *Lopez*, 14 F. Supp. 2d at 421 ("[W]hat matters is not the length of any particular period of employment, but the regularity of the relationship.").  Accordingly, this factor weighs in favor of finding Plaintiffs to be employees.

#### 5.   Extent to which the work is an integral part of the employer's business

Plaintiffs' work as stockbrokers was clearly integral to Defendants' business as a broker-dealer of securities.  (Baquet Decl. ¶ 2.)  *Cf. Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 191-92 (S.D.N.Y. 2003) (finding the work of delivery staff integral to defendants "engaged primarily in the business of providing delivery services to retail establishments").

#### 6.   Additional factors

"Though an employer's self-serving label of workers as independent contractors is not controlling, an employer's admission that his workers are employees covered by the FLSA is

11

highly probative." *Superior Care*, 840 F.2d at 1059 (internal citation omitted).  Prior to this

litigation, Defendants expressly classified Plaintiffs as employees.  Defendants reported

Plaintiffs income on IRS Forms W-2, rather than IRS Forms 1099.  (Pls.' 56.1 Counter ¶ 407.)

The fact that Defendants treated Plaintiffs as employees for tax purposes (which was more

expensive for Defendants than classifying Plaintiffs as independent contractors) is "highly

probative" of employee status.  *Superior Care*, 840 F.2d at 1059; *Halferty v. Pulse Drug

Co.*, 821 F.2d 261, 268 n.5 (5th Cir. 1987).  Defendants also regularly referred to stockbrokers as

employees in written materials and orally.  (Pls.' 56.1 Counter ¶ 406-408, 410.)

Moreover, as a regulatory matter, Plaintiffs could not be "in business for themselves" in

the securities industry.  A FINRA member – including a sole proprietorship – must have the

requisite number of principals, who must pass a qualification examination for principals, such as

the Series 23 or 24.  NASD Rules 1021, 1022.  The only licenses Plaintiffs held while working

for Fordham were their Series 7 and 63, neither of which qualify a person to be a principal.

(Pls.' 56.1 Counter ¶ 346.)  Thus, Plaintiffs could not operate as sole proprietors, and the only

way they could work as stockbrokers was by associating with a broker/dealer such as Fordham.

As set forth above, every factor of the economic reality test weighs in favor of finding

Plaintiffs to be employees.  As they were not in business for themselves but were economically

dependent on Defendants, they were employees under the FLSA.

### b.  New York law

Under the New York Labor Law,

the critical inquiry in determining whether an employment relationship exists
pertains to the degree of control exercised by the purported employer over the
results produced or the means used to achieve the results.  Factors relevant to
assessing control include whether the worker (1) worked at his own convenience,
(2) was free to engage in other employment, (3) received fringe benefits, (4) was
on the employer's payroll and (5) was on a fixed schedule.

*Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 198 (2003) (internal citations omitted).  "These factors, however, are not exhaustive: New York courts commonly consider additional factors." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013).  Thus, the Court should consider all facts relevant to determining the degree of control exercised by Defendants over drivers.  Moreover, while the standards for determining whether an individual is an employee are somewhat different under the FLSA and New York law, "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." *Id*. at 924.

### 1. Plaintiffs did not work at their own convenience and were required to adhere to a minimum schedule set by Defendants

Defendants required Plaintiffs to work a minimum number of hours per day and attend daily meetings, subject to discipline.  (Pls.' 56.1 Counter ¶¶ 358-365.)  Thus, Plaintiffs did not work at their own convenience and were required to adhere to a fixed schedule.  That Plaintiffs worked longer hours than the minimum required by Defendants does not change the fact that Defendants set and enforced attendance requirements.  Thus, these factors – whether the worker worked at his own convenience and was on a fixed schedule – weigh in favor of finding Plaintiffs to be employees.

### 2. Plaintiffs were not free to engage in other employment

As set forth *supra* Section III.A.ii.a.2., Plaintiffs were not free to engage in other employment.

### 3. Plaintiffs were on Defendants' payroll and could participate in Defendants' benefits programs

It is undisputed that Plaintiffs were on Defendants' payroll, their earnings were reported on IRS Forms W-2, and they could participate in Defendants' 401(k) and health insurance plans

at their own expense.[5]  (Pls.' 56.1 Counter ¶ 409.)  *Griffith v. Fordham Fin. Mgmt., Inc.*, No. 12

Civ. 1117, 2015 U.S. Dist. LEXIS 30869, at *13 n.7 (S.D.N.Y. Mar. 22, 2015).  Therefore, this

factor weighs in favor of finding Plaintiffs to be employees.

### 4.  Overall control

In addition to the *Bynog* factors, Defendants exercised substantial control over drivers as

discussed in Section III.A.ii.a.i., *supra*.  Therefore, there is sufficient evidence for a jury to

conclude that Plaintiffs were employees under New York law.

### iii.  All Plaintiffs worked overtime

All Plaintiffs testified that they worked more than 40 hours per week.  (Pls.' 56.1 Counter

¶ 411.)  This alone establishes a dispute of material fact as to whether or not they worked

overtime.  *See Reich v. S. New Eng. Telecoms. Corp.*, 121 F.3d 58, 66-67 (2d Cir. 1997) (where,

as here, employer do not keep required records of hours worked, employees can prove hours

worked by their testimony).  E-mail records do not prove that Plaintiffs did not work before 9:00

a.m. or after 6:00 p.m.  Plaintiffs uniformly state that they rarely used e-mail for work.  (Pls.'

56.1 Counter ¶ 371.)  Accordingly, the time stamps on e-mails do not accurately capture all (or

even most) of the time that Plaintiffs were working.  As Defendants did not provide Plaintiffs

with any extra compensation for their overtime hours (and, on this motion, they have not asserted

any exemption defenses), all Plaintiffs have overtime claims.  (*Id.* at ¶ 412.)

### iv.  All Plaintiffs have minimum wage claims

Defendants assert that Plaintiffs do not have minimum wage claims because their annual

pay exceeds the minimum wage times 40 hours per week for 52 weeks per year.  This position is

contrary to settled law.  An employer must meet its minimum wage obligations on a weekly

---

[5] Defendants' contention that Plaintiffs were not entitled to the same benefits as part time employees is false.
Plaintiffs and part time employees alike were not entitled to various benefits to which full time employees were
entitled.  (Pls.' 56.1 Counter ¶ 128.)

basis.  To determine whether an employee has received the minimum wage, one must divide the employee's weekly compensation by the number of hours he or she worked that week.  *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960) (minimum wage is calculated by dividing weekly compensation by weekly hours worked); *Karic v. Major Automotive Cos. Inc.*, 992 F. Supp. 2d 196, 201 (E.D.N.Y. 2014) ("NYLL indisputably requires that employers pay employees minimum wage and overtime on a weekly basis, regardless of whether those employees earn commission in subsequent weeks.  Any argument, then, as defendants advance, based on salary annualization is wholly unavailing."); *Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091, 2013 U.S. Dist. LEXIS 35808, at *28 (S.D.N.Y. Feb. 28, 2013) (same under FLSA).  Defendants' attempt to apply an "annual" minimum wage is therefore completely unsupported by the law.

Here, the Plaintiffs who were paid solely by commission have stated that there were weeks when they worked but had no income.  (Pls.' 56.1 Counter ¶ 413.)  This is a clear minimum wage violation.  The Plaintiffs who were paid a daily rate plus occasional commissions have also stated that there were weeks when they worked but generated no commissions. Defendants paid Plaintiff Adams $300 per week in weeks where he worked 60 or more hours. (*Id*. at ¶ 416.)  For part of his employment, Defendants paid Plaintiff Calabrese about $200 per week while he worked 60 or more hours per week.  (*Id*. at ¶¶ 414-415.)  This works out to hourly rates of $5.00 and $3.33 for Adams and Calabrese, respectively, far below the federal and New York minimum wages.  29 U.S.C. § 206(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1.

     **v.**     **Statutes of limitations**

        **c.**  **Defendants' FLSA violations were willful**

The FLSA's statute of limitations is three years for willful violations and two years for non-willful violations.  29 U.S.C. § 255(a).  The statute of limitations runs from the filing of the Complaint (for Named Plaintiffs) or from the filing of consent to sue forms (for the Opt-In Plaintiffs).  29 U.S.C. §§ 255, 256(b).  Defendants cannot show as a matter of law that their FLSA violations were not willful, *i.e.*, that they did not knowingly or recklessly disregard the requirements of the FLSA.  *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 366 (2d Cir. 2011). Accordingly, the Plaintiffs can pursue FLSA claims under the three year statute of limitations.

Summary judgment in a defendant's favor on willfulness will be denied where "there is no evidence that Defendants ever undertook a review of their practices or consulted with an attorney regarding such practices."  *Berrios v. Nicholas Zito Racing Stables, Inc.*, 849 F. Supp. 2d 372, 392 (E.D.N.Y. 2012).  Under similar facts, this Court has found summary judgment in plaintiff's favor to be appropriate.  *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 465 (S.D.N.Y. 2008) (Crotty, J.) ("Given Gristede's failure to demonstrate that it undertook to inquire whether its conduct was in compliance with the FLSA, there are no genuine issues of material fact as to whether [its] violations of the FLSA were willful.") (internal citation omitted).

Here, there is more than sufficient evidence from which a jury could conclude that Defendants' FLSA violations were willful.  Defendants explicitly classified Plaintiffs as employees, reporting their income on W-2 forms, subject to applicable payroll taxes and withholdings.  (Pls.' 56.1 Counter ¶ 409.)  They also regularly referred to Plaintiffs as "employees" in writing and orally.  (*Id*. at ¶¶ 407-408, 410.)  In light of this classification, a jury could conclude that Defendants knew or recklessly disregarded that Plaintiffs were employees.

There is also sufficient evidence to establish that Defendants did not review the compensation practices at issue here or consult with an attorney about them.  Fordham

16

designated director of compliance Phyllis Henderson to testify pursuant to Fed. R. Civ. P. 30(b)(6) regarding, *inter alia*, Fordham's compensation policies and practices and its classification of stockbrokers as exempt from overtime.  (*Id*. at ¶ 428.)  Henderson testified that she has a "very basic knowledge" of overtime law, which she acquired "from just living in this world," indicating that Defendants never consulted with an attorney regarding their failure to pay Plaintiffs overtime compensation.  (*Id*. at ¶ 430.)  Because Defendants did not consult with an attorney, their violations were willful.  *Torres*, 628 F. Supp. 2d at 465.

Defendants' admitted knowledge of minimum wage and overtime laws is also sufficient to establish that their violations were willful.  Not only did Fordham's Fed. R. Civ. P. 30(b)(6) witness testify that she had some knowledge of overtime law, but she also testified that Fordham posted in its offices Department of Labor posters regarding minimum wage and overtime law. (Pls.' 56.1 Counter ¶ 432.)  Thus, at a minimum, in failing to pay Plaintiffs minimum wage and overtime compensation, Defendants recklessly disregarded the information about those topics contained in their office posters.  *Vasquez v. Ranieri Cheese Corp.*, No. 07 CV 464, 2010 U.S. Dist. LEXIS 29431, at *53-54 (E.D.N.Y. Mar. 26, 2010); *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 295-96 (S.D.N.Y. 2002).  For the foregoing reasons, Defendants' FLSA violations were willful, and a three-year statute of limitations applies to those claims.

### d.  All Named and Opt-In Plaintiffs have timely NYLL claims

All Named and Opt-In Plaintiffs have timely NYLL claims.[6]  Pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the filing of a class action complaint tolls the statute of limitations for all putative class members.  *In re Worldcom Secs. Litig.*, 496 F.3d 245, 247 (2d Cir. 2007).  Here, the Named Plaintiffs filed the class action complaint in this action on February 14, 2012.  (Baquet Ex. A.)  The class was defined as "all Fordham Financial

---

[6] As set forth *infra* Section III.A.vi., the Opt-In Plaintiffs asserted NYLL claims by filing their consent to sue forms.

Management, Inc. employees who were employed as stock brokers at any New York location on or after the date that is six years before the filing of the Complaint in this case[.]" (*Id.* at ¶ 17.) The Opt-In Plaintiffs fall within this definition. (Pls.' 56.1 Counter ¶ 345.) Thus, the NYLL statute of limitations was tolled for the Opt-In Plaintiffs on February 14, 2012, and under the NYLL's six year statute of limitations they may pursue their NYLL claims going back to February 14, 2006. N.Y. Lab. L. §§ 198, 663. All Opt-In Plaintiffs worked for Defendants on or after February 14, 2006.[7] (Defs.' Mem. at 4.) Therefore, all Plaintiffs have timely NYLL claims.

### vi.     The Opt-In Plaintiffs have asserted NYLL claims

The Opt-In Plaintiffs asserted FLSA and NYLL claims by filing their consent to sue forms. In conditionally certifying the Collective, this Court authorized notice and consent to sue forms to be mailed to all stockbrokers who worked for Defendants during the six year New York statute of limitations period, even though the FLSA's statute of limitations is three years for willful violations. *Griffith v. Fordham Fin. Mgmt., Inc.*, No. 12 Civ. 1117, 2013 U.S. Dist. LEXIS 72909, at *10 (S.D.N.Y. May 22, 2013). This group included people whose only timely claims were NYLL claims but who were nonetheless afforded the opportunity to opt-in to the action. There are two reasons to give people without timely FLSA claims the opportunity to opt-in: (1) an Opt-In Plaintiff asserted NYLL claims by filing his consent to sue form because the NYLL claims arise from a common nucleus of operative facts as the FLSA claims, and, as a result, the two types of claims should be adjudicated together, *see Hernandez v. NJK*

---

[7] The parties dispute the start date of Opt-In Plaintiff Paul Calabrese. (Pls.' 56.1 Counter ¶ 38.) To the extent that Calabrese admitted a start date of June 24, 2009 in responding to Defendants' notices to admit, that was an error, and the admission should be withdrawn. Calabrese's U4 form shows that he registered with Fordham in October 2008. He has consistently testified that he passed the Series 7 exam on January 8, 2009 – as reflected in FINRA's Broker Check records – and began working as a stockbroker for Fordham at that time. (*Id.*) Withdrawal of Calabrese's admissions to a start date of June 24, 2009 would therefore promote the presentation of the merits of this action and would not prejudice Defendants. As a result, withdrawal of his admissions to No. 1 of Defendants' first and second notices to admit is appropriate under Fed. R. Civ. P. 36(b).

*Contractors, Inc.*, No. 09 CV 4812, 2015 U.S. Dist. LEXIS 57568, at *62-64 (E.D.N.Y. May 1, 2015); or (2) the Opt-In Plaintiffs' NYLL claims would be included in the case when the class was certified or, if the class was not certified, by amending the complaint when class certification was denied.

Plaintiffs believe the former reasoning applies,[8] particularly since Defendants were on notice that the Opt-In Plaintiffs were pursuing NYLL claims and Defendants took discovery relating to those claims.  (Pls.' 56.1 Counter ¶¶ 421, 425.)  However, in the event the Court disagrees, Plaintiffs should be permitted to amend the Complaint to include the Opt-In Plaintiffs' NYLL claims.  Fed. R. Civ. P. 15(a) provides that a party should be freely given leave to amend its pleadings when justice so requires.  Where, as here, a party seeks to amend a pleading after the deadline to do so set in a scheduling order, a court conducts a two-stage analysis.  The court first determines, pursuant to Fed. R. Civ. P. 16(b), whether there is "good cause" to modify the scheduling order and permit an amended pleading.[9]  *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir. 2000).  If there is good cause, a court then decides under Fed. R. Civ. P. 15(a) whether to permit the amended pleading.  *Lincoln v. Potter*, 418 F. Supp. 2d 443, 453-54 (S.D.N.Y. 2006).

"Under Rule 16(b), a party may obtain a modification of the scheduling order only 'upon a showing of good cause.'"  *Kassner v. 2nd Ave. Deli., Inc.*, 496 F.3d 229, 243 (2d Cir. 2007).  Factors relevant to good cause include "whether the moving party can demonstrate diligence" and "whether allowing the amendment of the pleading at this stage of the litigation will

---

[8] To the extent that Defendants contend that the Court cannot adjudicate the Opt-In Plaintiffs' state law claims because of the language of the consent to sue forms, Plaintiffs note that the language of the consent to sue forms in this case is substantially similar to that in the consent to sue forms in *Hernandez*, 2015 U.S. Dist. LEXIS 54568, where the court adjudicated the opt-in plaintiffs' state law claims.  (*Compare* Schulman Ex. 31 *with* Suess Ex. D.)

[9] Fed. R. Civ. P. 16(b)(4) provides, "A schedule may be modified only for good cause and with the judge's consent."

prejudice" the non-moving party.  *Id.* at 244.  Plaintiffs have acted diligently in seeking to amend the complaint.  To be sure, in light of *American Pipe* tolling, discussed *supra* Section III.v.b., there was no reason to add the Opt-In Plaintiffs to the complaint as named Plaintiffs before the class certification motion was denied.  Even after the motion was denied, the Opt-In Plaintiffs had a good faith belief that they could pursue their NYLL claims without amending the complaint, for the reasons outlined above.  Now, in response to Defendants' motion, which puts this matter in issue before the Court for the first time, Plaintiffs seek to amend the complaint if the Court finds that the Opt-In Plaintiffs have not already adequately asserted their NYLL claims.  Thus, Plaintiffs have acted diligently.   In addition, the amendment will not prejudice Defendants.  Defendants had the opportunity to take discovery from all of the Opt-In Plaintiffs and in fact did so.  This discovery included information relating to their NYLL claims. Therefore, there is good cause to permit the amendment under Fed. R. Civ. P. 16(b).

Fed. R. Civ. P. 15(a) permits a party to amend a pleading at any time with leave of the court, and provides that "[t]he court should freely give leave when justice so requires."  Leave should be given unless there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed," undue prejudice to the non-movant, or if the amendment is futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  For the same reasons that there is good cause to permit amendment under Fed. R. Civ. P. 16(b), these factors are not present here.  Moreover, adjudicating all parties' NYLL claims together with the FLSA claims will promote judicial efficiency.  Thus, if the Court finds that the Opt-In Plaintiffs have not already asserted NYLL claims, it should permit the Plaintiffs to amend the complaint to include the Opt-In Plaintiffs as named Plaintiffs asserting the NYLL claims already included in the complaint.

**B.  The FLSA Collective Should Not Be Decertified**

The two Named Plaintiffs and four Opt-In Plaintiffs should be able to proceed as an

FLSA collective.  At this stage of litigation, following discovery, "'the district court will, on a

fuller record, determine whether a so-called 'collective action' may go forward by determining

whether the plaintiffs who have opted in are in fact 'similarly situated to the named plaintiffs.'"

*McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 367 (S.D.N.Y. 2014) (quoting *Myers v.*

*Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)).  "[T]he second-stage 'similarly-situated'

analysis under [29 U.S.C.] § 216(b) is 'considerably less stringent than the requirement of Fed.

R. Civ. P. 23(b)(3) that common questions 'predominate.'"  *Gardner v. Western Beef Props.,*

*Inc.*, No. 07 CV 2345, 2013 U.S. Dist. LEXIS 56511, at *16 (E.D.N.Y. Mar. 25, 2013)

(collecting cases).  Given the small number of Opt-In Plaintiffs in this case, it would be

inappropriate to apply a Rule 23 analysis here.  Indeed, "imposing any additional restrictions

from Rule 23 would be contrary to the broad remedial goals of the FLSA[.]"  *O'Brien v. Ed*

*Donnelly Enters., Inc.*, 575 F.3d 567, 586 (6th Cir. 2009) (internal quotation marks omitted).

"The similarly situated analysis can be viewed, in some respects, as a sliding scale.  The

more opt-ins there are in the class, the more the analysis under § 216(b) will mirror the analysis

under Rule 23."  *Gardner*, 2013 U.S. Dist. LEXIS 56511, at *18.

> In determining whether a putative class of plaintiffs is "similarly situated,"
> court[s] review several factors, including "(1) disparate factual and employment
> settings of the individual plaintiffs; (2) the various defenses available to defendant
> which appear to be individual to each plaintiff; [and] (3) fairness and procedural
> considerations.

*Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078, 2007 U.S. Dist. LEXIS 19634, at *19

(S.D.N.Y. Feb. 27, 2007).  All of these factors support finding that the named Plaintiffs and the

Opt-In Plaintiffs are similarly situated.

21

The named and Opt-In Plaintiffs worked in similar factual and employment settings.  To be sure, many facts relevant to determining whether Plaintiffs were employees or independent contractors are subject to common proof, including, without limitation, (1) Fordham required Plaintiffs to work a minimum number of hours; (2) Fordham required Plaintiffs to attend certain meetings; (3) Fordham required Plaintiffs to adhere to a dress code; (4) Plaintiffs could only use marketing and advertising materials created by Fordham; (5) Fordham reviewed Plaintiffs' written communications; (6) Fordham monitored Plaintiffs' phone calls; (7) all of Plaintiffs' trades[10], customers, and commission had to be approved by Fordham; (8) Plaintiffs were subject to discipline for failing to follow Fordham's rules regarding attendance, dress code, and communications with clients; (9) Fordham pushed Plaintiffs to sell particular securities; (10) Fordham had the ability to bar Plaintiffs from selling particular securities; (11) Fordham, not Plaintiffs, hired sales assistants and cold callers; (12) Plaintiffs could not work for anyone besides Fordham without Fordham's permission; (13) Plaintiffs in fact worked exclusively for Fordham; (14) Plaintiffs could not sell securities outside of Fordham's channels without Fordham's permission; (15) Plaintiffs worked for Fordham for indefinite durations on an at will basis; (16) Plaintiffs' work was integral to Defendants' business; (17) Fordham reported Plaintiffs' income on IRS Forms W-2; (18) Fordham regularly referred to Plaintiffs as employees in written materials; (19) Plaintiffs had Series 7 and 63 licenses while working for Fordham; (20) Plaintiffs could only sell securities if they were affiliated with a broker-dealer such as Fordham; (21) all Plaintiffs worked in the same office; (22) Fordham provided Plaintiffs with desks, telephones, and computers; (23) Fordham invested in office space and equipment as well as staff;

---

[10] In denying Plaintiffs' class certification motion, the Court found that the Plaintiffs' differing testimony as to their role in choosing which stocks to recommend was a "substantial disagreement[]" regarding Fordham's control. *Griffith*, , 2015 U.S. Dist. LEXIS 30869, at *13.  This, however, does not preclude finding that Plaintiffs are similarly situated under 29 U.S.C. § 216(b), as it is undisputed that Fordham had the ultimate power to approve or disapprove trades.

and (24) Plaintiffs could participate in Fordham's 401(k) and health insurance at their own expense. In light of these commonalities, Plaintiffs clearly worked in similar factual and employment settings.

The small differences identified by Defendants do not support a finding that the Plaintiffs worked in disparate factual and employment settings. While Plaintiffs maintain that there are no meaningful differences between the roles of what Defendants refer to as "trainees/cold callers" and full "stockbrokers," to the extent that the Court finds otherwise, that does not mean the collective should be decertified. The Named Plaintiffs worked in both roles. Therefore, it is immaterial to the similarly situated analysis if some of the Opt-In Plaintiffs worked in only one of the two roles. Regardless of their role, they worked in the same role as the Named Plaintiffs and under similar working conditions. For the same reason, the different compensation structures for trainees/cold callers and stockbrokers is irrelevant – the named Plaintiffs were compensated under both structures. In any event, under both compensation structures, Defendants failed to pay an overtime premium.

Defendants have produced two types of employment agreements signed by the Named and Opt-In Plaintiffs. However, the fact that some Plaintiffs signed one or the other does not mean that they are not similarly situated to the Named Plaintiffs, as between the two Named Plaintiffs they signed both agreements. (Baquet Exs. B & H; Schulman Decl. ¶ 41; Schulman Ex. 31.) Therefore, the significance of each agreement will have to be evaluated by the factfinder, and all of the Opt-In Plaintiffs will be similarly situated to one or both Named Plaintiffs with respect to this analysis.[11] In addition, the fact that some Plaintiffs did not recall receiving Defendants' employee handbook is insignificant. Regardless of whether any particular

---

[11] Defendants no longer have the agreement(s) Plaintiff Francois signed (if any), because he last worked for them in 2006. (Pls.' 56.1 Counter ¶ 427.)

Plaintiff recalled receiving the handbook, it is clearly Defendants' position that the handbook sets forth policies that apply to all Plaintiffs.  Similarly the policies in the WSPs applied to all Plaintiffs.

While Plaintiffs maintain that the question of whether they were employees can be determined collectively based on common proof, such common proof of liability is not necessary to maintain the collective.  The Sixth Circuit found plaintiffs who alleged that their employer forced them to work off the clock and improperly edited their time records to be similarly situated even though "proof of a violation as to one particular plaintiff does not prove that the defendant violated any other plaintiff's rights under the FLSA" because "their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585.  Here, Plaintiffs all allege that Defendants' compensation structure denied them minimum wage and overtime compensation.  Their arguments that they were employees rather than independent contractors rely primarily on common evidence.  This is sufficient to maintain the collective.

No individualized defenses justify decertification.  The primary individualized defense that Defendants identify appears to be that the Plaintiffs worked varying hours, and Plaintiffs must prove that Defendants had actual or constructive knowledge of those hours.  However, "individual differences in the number of hours worked . . . will not warrant decertification as long as [p]laintiffs show that they are subject to a single decision, policy, or plan." *McGlone*, 49 F. Supp. 3d at 368.  In this case, there was a single decision, policy, or plan not to pay Plaintiffs minimum wage and overtime compensation.  "To the extent that Defendants allege an actual or constructive knowledge defense, it is unlikely to vary between individual Plaintiffs. . . . Plaintiffs shared the same supervisors, so to the extent that the supervisors knew that some of Plaintiffs

24

worked [overtime] . . . they likely knew that most or all of Plaintiffs did so as well." *Id.*  To be sure, Plaintiffs have testified that Defendants required them to work a minimum number of hours, which included overtime hours.  If credited by the factfinder, this would establish Defendants' knowledge of Plaintiffs' hours.

In any event, given the small number of Opt-In Plaintiffs in this case, an individualized analysis of their hours worked would be manageable.  *Cf. Gardner*, 2013 U.S. Dist. LEXIS 56511, at *42 (where there were a small number of opt-in plaintiffs, finding that individualized determinations with respect to two prongs of the executive exemption would be manageable).

Fairness and procedural considerations strongly favor maintaining certification of the FLSA collective and proceeding with one trial rather than five.  "[I]n determining fairness and procedural considerations, courts consider whether a collective action would lower costs to the plaintiffs through the pooling of resources, efficiently resolve common issues of law and fact, and coherently manage the class in a manner that will not prejudice any party." *Ayers*, 2007 U.S. Dist. LEXIS 19634, at *21 (alterations and quotation marks omitted).  There are two named Plaintiffs and four Opt-In Plaintiffs in this case.  "Litigating [minimum wage and] overtime claims for each of these Plaintiffs individually would be burdensome on Plaintiffs, Defendants, and the courts." *McGlone*, 49 F. Supp. 3d at 369.  As set forth above, there are common issues of law and fact that are most efficiently resolved in a single litigation.  Given the small number of Plaintiffs, proceeding as a collective presents no manageability concerns.  Therefore, this factor supports maintaining the FLSA collective.

For the foregoing reasons, the collective should not be decertified.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion should be denied.

Dated:  New York, New York
        August 14, 2015

                                        Respectfully submitted,

                                        By: /s/ Denise A. Schulman
                                            D. Maimon Kirschenbaum
                                            Denise Schulman
                                            JOSEPH & KIRSCHENBAUM LLP
                                          32 Broadway, Suite 601
                                          New York, NY  10279
                                          (212) 688-5640

                                        *Attorneys for Named Plaintiffs and Opt-In Plaintiffs*