UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTOPHER D. GRIFFITH and DAVID : Civil Action No. 12 civ 1117
SPECIALE et al., :
 :
                     Plaintiffs, :
 :
    - against - :
 :
FORDHAM FINANCIAL MANAGEMENT, INC. :
And WILLIAM BAQUET, :
 :
                     Defendants. :
------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
FORDHAM FINANCIAL MANAGEMENT, INC.'S AND WILLIAM BAQUET'S
MOTION FOR SUMMARY JUDGMENT TO
DECERTIFY THE COLLECTIVE ACTION CLASS**

Schrader & Schoenberg, LLP
Attorneys for Defendants
711 Third Avenue, Suite 1803
New York, New York 10017
(212) 986-4888

On the Brief: Benjamin Suess, Esq.

# TABLE OF CONTENTS

|  | Page |
|---|---|

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT..................................................................................................................1

I.  INDIVIDUAL ISSUES PREDOMONATE OVER COMMON ISSUES ................1

II. THE "SHAM AFFIDAVITS" SHOULD BE DISREGARDED ..........................2

III. FFM DID NOT CONTROL THE PLAINTIFFS' MEANS OF PRODUCTION ........6

IV. THE OPT-IN PLAINTIFFS HAVE NOT ASSERTED
    ANY STATE LAW CLAIMS ...........................................................................7

V.  IF THE CLASS IS DECERTIFIED, THE ENIRE ACTION SHOULD BE
    DISMISSED AND THE PLAINTIFFS SHOULD BE REQUIRED TO
    SEEK INDIVIDUAL REMEDIES THROUGH
    FINRA ARBITRATION ..................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

Aiola v. Malverne Union Free School Dist., No. 15-cv-064 (ADS),
      2015 WL 4276187 (E.D.N.Y. 2015)..........................................................................9

Charlot v. Ecolab, Inc., __ F. Supp.3d __, 12-CV-4543(KAM),
      2015 WL 1439916 (E.D.N.Y. March 27, 2015)...................................................9-10

Coheleach v. Bear, Stearns & Co., Inc., 440 F.Supp.2d 338 (S.D.N.Y. 2006)...................10

Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619 (2d Cir. 1996)...............2-3

In re Fosamax Prods. Liab. Litig., 707 F.3d 189 (2d Cir. 2013)...........................................3

Gomez v. Brill Securities, Inc., 95 A.D.3d 32, 943 N.Y.S.2d 400 (1st Dept. 2012)............10

Grochowski v. Phoenix Constr., 318 F.3d 80 (2d Cir. 2003)..................................................8

Jin Dong Wang v. LW Restaurant, Inc., -- F.Supp.3d -- (E.D.N.Y. 2015).............................3

Romero v. Napoli, 08 Civ. 8380 (CM), 2013 WL 1479308 (S.D.N.Y. 2013).........................9

Ruiz v. Citibank, N.A., --- F.Supp.3d ----, 2015 WL 1254820 (S.D.N.Y. 2015)....................2

Saleem v. Corporate Ground Transp. Group, Ltd., 12-CV-8450 (JMF),
      2014 WL 7106443 (S.D.N.Y. Dec. 9, 2014)..............................................................8

**Statutes & Rules**

Fed. R. Civ. P. 15(c)(1)(C)(ii)................................................................................................9

Fed. R. Civ. P. 16(b)(4).........................................................................................................8

FINRA Rule 13200 ..............................................................................................................10

FINRA Rule13204.................................................................................................................10

Defendants Fordham Financial Management, Inc. ("FFM") and William Baquet ("Baquet") submit this reply brief in further support of their motion for summary judgment and to decertify the collective action. The Court is respectfully referred to the accompanying Reply Declarations of Phyllis Henderson ("Henderson Reply Dec.") and Benjamin Suess ("Suess Reply Dec.") dated September 8, 2015, and prior declarations submitted on this motion, as well as this Court's prior March 12, 2015 Decision Denying Plaintiffs' Rule 23 Class Certification.

## I. INDIVIDUAL ISSUES PREDOMONATE OVER COMMON ISSUES

Plaintiffs' opposition to Defendants' motion to decertify the collective action relies upon the same facts for which the Court already denied Plaintiffs' motion for Rule 23 class certification. As the court previously found in denying class certification, individual issues predominate over common issues. The Class Members worked different hours, worked under different conditions, had different job status, were compensated differently, performed different duties and in large part have differing stories. Some Class Members were trainees/cold callers-others were brokers; some earned commissions only-others earned a fixed salary plus commissions; some had written contracts which authorized deductions-others did not.

The Court held in its March 12, 2015 decision denying Rule 23 class certification (the "Decision", see Exhibit J to the July 13, 2015 Decl. of Benjamin Suess ("Suess Dec.")), that there was no commonality and predominance among the putative class of brokers because their testimonies demonstrated there was no "particular fixed schedule applicable to all stockbrokers;" there is "substantial disagreement regarding the level of control Defendants exercise over Potential Class Members' day-to-day responsibilities;" there were different methods of compensation (salary and/or commissions); the Class Members had different duties (cold callers versus brokers); the Class Members worked under different agreements (written or oral), which

required individualized assessment; some brokers authorized deductions while others did not, which also required individualized assessment; and the terms of the Agreements and other indicia of control were inconsistently enforced. Suess Dec. Ex. J (Decision) at pp. 6, 8. This holding is law of the case and applies equally to an analysis of the collective action.

Plaintiffs' facts have not changed with regard to factual allegations concerning hours of attendance, compensation and payroll deductions since the class certification motion. In the absence of any differing facts, consistence would require the decertification of the FSLA claims. See Ruiz v. Citibank, N.A., --- F.Supp.3d ----, 2015 WL 1254820 *15 (S.D.N.Y. 2015) ("it is not mere coincidence that courts facing parallel motions to decertify an FLSA collective action under Section 216(b) and to certify a class action under Rule 23 have tended to allow either both actions or neither to proceed on a collective basis.").

The only issue upon which the plaintiff attempts to create a common issue between the various plaintiffs is the issue of "control" for the purpose of determining whether these persons were employees. Even if there was, arguendo, commonality of factual issues on this single topic, it would not negate the complete lack of commonality of all other disputed issues in the case. As noted below, even on this issue of control, the plaintiffs have failed to create commonality and on this topic, the new declarations submitted should be disregarded in that they are "sham testimony" directly contradicted by prior affidavits and depositions in this case.

## II.   THE "SHAM AFFIDAVITS" SHOULD BE DISREGARDED

With regard to the Sham Affidavits (attempting to create common facts relating to control issues only), first, these affidavits should be disregarded in that they contradict prior testimony from each of the individual plaintiffs. It is black letter law that a "party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission

2

or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619 (2d Cir. 1996). "Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial." Id. "The court may also take into account the timing of the supposedly contradictory testimony in deciding whether to assess the credibility of a witness' account on a motion for summary judgment." Jin Dong Wang v. LW Restaurant, Inc., -- F.Supp.3d -- *15 (E.D.N.Y. 2015) citing In re Fosamax Prods. Liab. Litig., 707 F.3d 189, 195 (2d Cir. 2013). In this case, the following contradictory contentions in the "sham affidavits" should be disregarded:

    a.    In their current declarations, Griffith, Speciale and Adams contend that FFM required brokers to sell specific stocks.[1] However, in prior testimony, they admitted that FFM only <u>suggested</u> certain securities and that brokers were required to recommend stocks that complied with regulatory suitability rules.[2]

    b.    Speciale, Adams and Miller now contend that all customer accounts were the property of FFM (not their property).[3] Previously, Speciale admitted that he took clients with him when he left FFM. Suess Reply Dec. Ex. H (Speciale Tr.) at 38:6-39:9. The Plaintiffs also admitted in their Counter-Statement of Material Facts (the "Counter-Statement") that, "[w]hen brokers voluntarily terminate their association with FFM, all clients that they signed were free to transfer their accounts from FFM to their new firms." Counter-Statement ¶ 190.

    c.    Griffith, Miller and Adams now contend that FFM had to approve the commissions charged to their customers.[4] However, previously they each testified that they had

---

[1] Suess Reply Dec. Ex. A (Griffith Dec.) ¶¶ 61, 62; Ex. E (Speciale Dec.) ¶ 21; Ex. L (Adams Dec.) ¶ 27.
[2] Suess Reply Dec. Ex. B (Griffith Tr.) at 55:20-60:3; Ex. H (Speciale Tr.) at 27:9-32:7; Ex. N (Adams Tr.) at 35:24-36:17.
[3] Suess Reply Dec. Ex. I (Miller Dec.) ¶ 31; Ex. E (Speciale Dec.) ¶ 30; Ex. L (Adams Dec.) ¶ 34.
[4] Suess Reply Dec. Ex. A (Griffith Dec.) ¶¶ 33, 58; Ex. L (Adams Dec.) ¶ 26; Ex. I (Miller Dec.) ¶ 22.

the discretion to set the commissions charged to their customers.[5]

d. Griffith and Miller now contend that FFM determined the commission split between them and FFM. Suess Reply Dec. Ex. A (Griffith Dec.) ¶ 57; Ex. I (Miller Dec.) ¶ 37. However, previous testimony makes clear that this was negotiated at the outset of their relationship and contained in a written Registered Representative Agreement for each of them. Id. at Ex. B (Griffith Tr.) at 70:7-71:4; Ex. K (Miller Tr.) at 52:6-53:5.

e. In current affidavits, Griffith, Speciale and Miller contend that FFM levied finds for coming to work late or missing sales meetings.[6] Previously, the declarants testified that no such fines were issued and they had no first-hand knowledge of any fines being assessed against anyone in the firm.[7]

f. Griffith, Speciale, Adams, Calabrese and Miller contend that FFM management was required to approve trades, customers and commissions.[8] Declarants previously acknowledged that they were personally obligated to comply with FINRA rules such as suitability ("Know Your Customer") and the 5% commission rule, and that FFM reviewed transactions only for compliance with these regulatory restrictions.[9]

g. Speciale and Miller now contend that FFM required them to make 500 telephone

---

[5] Counter-Statement ¶ 198; Suess Reply Dec. Ex. B (Griffith Tr.) at 60:16-63:1; 69:19-70:18; 91:6-24; Ex. K (Miller Tr.) at 40:3-45:9.

[6] Suess Reply Dec. Ex. A [Declaration dated August 5, 2015 ("Griffith Dec.")] at ¶¶ 14, 17; Ex. E [Declaration of David Speciale dated August 12, 2015 ("Speciale Dec.")] at ¶ 15; Ex. I [Declaration of Mack Miller dated August 7, 2015 ("Miller Dec.")] at ¶¶ 9, 11.

[7] Suess Reply Dec. Ex. B. (Griffith Tr.) at 129:15-130:9; 131:2-135:7; Ex. H (Speciale Tr.) at 67:15-68:3; Ex. K (Miller Tr.) at 72:17-74:13.

[8] Suess Reply Dec. Ex. L [Declaration of Alonzo Adams dated August 11, 2015 ("Adams Dec.")] at ¶ 26; Ex. A (Griffith Dec.) at ¶ 33; Ex. E (Speciale Dec.) at ¶ 18; Ex. I (Miller Dec.) at ¶ 22.

[9] Counter-Statement ¶¶ 187, 198; Suess Reply Dec. Ex. B (Griffith Tr.) at 53:1-54:2; 55:16-65:15; 68:3-16; 69:19-70:18; 82:21-83:19; 91:6-24; 128:19-22; 135:8-15; Ex. H (Speciale Tr.) at 35:8-37:11; 40:4-41:7; 70:5-18; Ex. K (Miller Tr.) at 33:19-35:13; 37:3-39:2; 40:3-45:9; Ex. N (Adams Tr.) at 34:12-38:15; 44:6-46:6; Ex. P [Transcript of Paul Calabrese dated January 28, 2014 ("Calabrese Tr.")] at 44:16-53:4.

solicitations per day. Suess Reply Dec. Ex. E (Speciale Dec.) ¶ 9; Ex. I (Miller Dec.) ¶ 21. However, Miller previously testified that this did not occur at FFM (it was at another firm at which he was employed prior to FFM) and Speciale previously testified he was only required to make calls as a "cold caller" prior to his being a full time registered representative. Id. at Ex. H (Speciale Tr.) at 16:5-20; Ex. K (Miller Tr.) at 14:9-51. [The Court should note that this lawsuit is limited to the time frame when plaintiffs were full time registered representatives].

  h. Griffith and Speciale now contend that they were prohibited from working anywhere else without FFM's approval while associated with Fordham. Suess Reply Dec. Ex. A (Griffith Dec.) ¶ 34; Ex. E (Speciale Dec.) ¶ 22. However, each previously testified that the prohibition against dual registration was a FINRA regulation. Id. at Ex. B (Griffith Tr.) at 136:7-22; Ex. H (Speciale Tr.) at 71:2-11.

  i. Griffith now contends that he required FFM's approval before sending out any marketing materials. Suess Reply Dec. Ex. A (Griffith Dec.) ¶ 49. Griffith previously testified that FFM never asked him to submit reports substantiating any outside marketing activities. Id. at Ex. B (Griffith Tr.) at 64:4-65:15.

  j. Griffith now contends that FFM imposed a minimum commission. Suess Reply Dec. Ex. A (Griffith Dec.) ¶ 58. However, Griffith previously testified that the "rule" was not enforced. Id. at Ex. B (Griffith Tr.) at 60:16-63:1; 69:19-70:18; 91:6-24.

  k. Griffith and Speciale contend that FFM required brokers to be fingerprinted and have background checks. Suess Reply Dec. Ex. A (Griffith Dec.) ¶ 27; Ex. E (Speciale Dec.) ¶ 27. Each previously acknowledged that this was a FINRA regulation required for the entire industry. Id. at Ex. B (Griffith Tr.) at 136:23-137:5; Ex. H (Speciale Tr.) at 72:17-73:9.

Furthermore, Plaintiffs made the following contentions for the first time in opposition to this motion: (a) FFM decided how commissions are divided with the brokers;[10] (b) FFM prohibits brokers from creating marketing materials;[11] (c) FFM reviews and approves all communications;[12] (d) FFM monitored brokers' telephone calls;[13] (e) FFM prohibited brokers from hiring any employees and required brokers to use FFM's sales assistants;[14] (f) FFM prohibited brokers from using email for recommendations to clients, solicitations of clients and accepting trades;[15] (g) FFM prohibited brokers from using any other "business channels";[16] and (h) FFM prohibited brokers from having outside investments without approval.[17]

Each of these requirements are imposed by regulatory bodies (either FINRA or the SEC) and do not indicate "control" by Fordham. See Henderson Reply Dec. It should also be noted that plaintiffs have admitted that all brokers at FFM received a copy of the Employment Handbook which specifically states that brokers are not required to work any set hours. See Plaintiffs' Counter-Statement ¶¶ 120, 123-125. It is almost worth asking the rhetorical question as to whether these brokers have intentionally altered their testimony for the purpose of trying to salvage their claims.

### III. FFM DID NOT CONTROL THE PLAINTIFFS' MEANS OF PRODUCTION

Moving to the substance of the case, plaintiffs have failed to rebut that they should be treated as independent contractors. Plaintiffs have failed to demonstrate that FFM controlled

---

[10] Suess Reply Dec. Ex. A (Griffith Dec.) ¶ 57; Ex. E (Speciale Dec.) ¶ 33; Ex. I (Miller Dec.) ¶ 37.
[11] Suess Reply Dec. Ex. A (Griffith Dec.) ¶ 49; Ex. L (Adams Dec.) ¶ 15; Ex I (Miller Dec.) ¶ 26.
[12] Suess Reply Dec. Ex. A (Griffith Dec.) ¶ 50; Ex. L (Adams Dec.) ¶ 15; Ex. I (Miller Dec.) ¶ 26.
[13] Suess Reply Dec. Ex. A (Griffith Dec.) ¶ 51; Ex. E (Speciale Dec.) ¶ 9.
[14] Suess Reply Dec. Ex. A (Griffith Dec.) ¶¶ 38, 39; Ex. E (Speciale Dec.) ¶ 26; Ex. L (Adams Dec.) ¶ 32; Ex. I (Miller Dec.) ¶¶ 29, 30.
[15] Suess Reply Dec. Ex. A (Griffith Dec.) ¶ 29; Ex. E (Speciale Dec.) ¶ 10; Ex. L (Adams Dec.) ¶ 11; Ex. I (Miller Dec.) ¶ 18.
[16] Suess Reply Dec. Ex. A (Griffith Dec.) ¶ 37; Ex. L (Adams Dec.) ¶ 31; Ex. I (Miller Dec.) ¶ 25.
[17] Suess Reply Dec. Ex. E (Speciale Dec.) ¶ 36; Ex. L (Adams Dec.) ¶ 30; Ex. I (Miller Dec.) ¶ 27.

their means of production sufficient to classify them as employees. Previously, the Court found in the Decision that "Plaintiffs' testimony indicates substantial disagreement regarding the level of control Defendants exercise over Potential Class Members' day-to-day responsibilities." Suess Dec. Ex. J (Decision) at p. 8.

To the extent that Plaintiffs have asserted entirely new contentions in their current declarations to try to demonstrate purported control, most factual allegations are devoid of legal significance in that the conduct imposed by FFM is merely compliance with FINRA and SEC rules and regulations.[18] Moreover, the Court should note that since the new declarations are <u>contradicted by prior testimony of these same collective action members</u>, it creates serious credibility issues for each individual further undercutting any contention that these allegations should be handled on a collective basis.

## IV. <u>THE OPT-IN PLAINTIFFS HAVE NOT ASSERTED ANY STATE LAW CLAIMS</u>

The Opt-In Plaintiffs have not asserted any state-law claims in their individual capacities, which is made clear by the extremely narrow scope of the opt-in form they executed and entitled "CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT." These consents do not mention any state-law claims, and the text of the consent clearly states, "I hereby consent to be a party plaintiff in this lawsuit *in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b)*."

Plaintiffs' contention that their unasserted state-law claims "arise from a common

---

[18] These regulations are discussed in detail in the Henderson Reply Declaration and require such things as FFM to supervise brokers' trades and commissions (suitability, 5% rule, "selling away"); communications with customers via telephone and email (no email solicitation and non-verbal orders); social media activity; dual registration; outside activities; personal investment accounts; continuing education; marketing and advertising; recordkeeping (notes, posting books); and compliance verification (annual Form U4 updates, state registration). See Henderson Reply Dec.

nucleus of operative fact" does not change the nature of the claims actually asserted. Opt-In consents are strictly construed, and there is no mention of any pendent state claims in the consents executed by the Opt-In Plaintiffs. See Saleem v. Corporate Ground Transp. Group, Ltd., 12-CV-8450 (JMF), 2014 WL 7106443 (S.D.N.Y. Dec. 9, 2014). Plaintiffs implicitly concede that the consent forms did not include any state-law claims, because they argue in the alternative that they should be permitted to amend their complaint to add additional state-law claims, and that such amended claims should "relate back" to the filing of the original complaint. See Pl. Opp. Mem. at pp. 19-20. As an initial matter, any proposed amendment is untimely, as the deadline for the amendment of pleadings expired more than three years ago, on August 17, 2012. See Dkt. No. 10, Civil Case Management Plan and Scheduling Order]. The discovery deadline has passed, and summary judgment motions have been filed. Plaintiffs have been aware of the identities of the Opt-In plaintiffs since at least August 2013, when the consents were filed. They were also aware of potential state-law labor claims since the inception of this case, since those claims were asserted on behalf of the 2 named Plaintiffs in the Complaint. If the plaintiffs wanted to add the Opt-In plaintiffs as additional named parties, they could have done so in 2013. Once a scheduling order has been entered, it may only be modified upon a showing of "good cause." See Fed. R. Civ. P. 16(b)(4). "A finding of good cause depends upon the diligence of the moving party." Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003). In Grochowski, the Second Circuit affirmed the denial of plaintiffs' motion for leave to amend their complaint to complaint to add New York Labor Law claims where "the plaintiffs delayed for more than one year before seeking to amend their complaint," and "when the motion was filed, discovery had been completed and a summary judgment motion was pending." Plaintiffs' delay in this case has been even more egregious, as the plaintiffs waited more than two years after the identities of the

Opt-In plaintiffs was known to them. This Court should therefore deny plaintiffs' request to modify the scheduling order, as they have not shown "good cause" for doing so.

Plaintiffs also have not complied with the rules for seeking leave to amend by failing to cross-move for leave to amend and providing the Court with a proposed amended pleading. See Aiola v. Malverne Union Free School Dist., No. 15-cv-064 (ADS), 2015 WL 4276187 *19 (E.D.N.Y. 2015)("courts have held that a bare request to amend a pleading, contained in a brief, which does not also attached the proposed amended pleading is improper under FRCP 15") (internal citations and quotations omitted); Romero v. Napoli, 08 Civ. 8380 (CM), 2013 WL 1479308 (S.D.N.Y. 2013)(denying leave to amend where movant failed to file a copy of the proposed amended pleading because "it is impossible to assess whether leave to amend should be granted" in absence of a pleading).

Even if the Opt-In Plaintiffs are allowed to join this case as additional named parties and to assert state-law claims, they cannot satisfy the requirements for the relation back of their claims. Where a party seeks to add a new party to a case, the movant must show that there was "a mistake concerning the proper party's identity" and that the opponent "knew or should have known" of the identity of the proper party. Fed. R. Civ. P. 15(c)(1)(C)(ii). In Charlot v. Ecolab, Inc., __ F. Supp.3d __, 12-CV-4543(KAM), 2015 WL 1439916 (E.D.N.Y. March 27, 2015), the plaintiff brought an FLSA claim and later sought to amend its pleading to add additional named plaintiffs to assert FLSA and state law wage and hour claims and to have the new claims "relate back" to the date of the filing of the original claims. Magistrate Judge Scanlon held that:

> [T]he record before the Court does not contain any suggestion that Ecolab was aware of a mistake concerning the proper plaintiff's identities. Instead, it appears that the Named Parties themselves were not aware of the Proposed Named Plaintiffs at the time of the original Complaint. Although the Named Plaintiffs were aware that Ecolab was a nationwide company, they appear to have made a

strategic decision to file their action based on the claims of the Named Plaintiffs only. This is not cognizable as a mistake within the meaning of the Rule.

2015 WL 1439916 at 33. This holding was affirmed by the district court. Id. at 10-11.

In this case, FFM was not aware of the identities of the brokers who would eventually file Opt-In forms when the Complaint was filed. Furthermore, plaintiffs apparently made a strategic decision not to join the Opt-In Plaintiffs as additional named plaintiffs in 2013, choosing instead to rely upon the New York Labor Law claims asserted by the named plaintiffs. Under the circumstances, the newly-asserted state-law claims of the Opt-In plaintiffs would not relate back to the date of the filing of the original Complaint, even if plaintiffs were granted leave to amend.

## V.   IF THE CLASS IS DECERTIFIED, THE ENIRE ACTION SHOULD BE DISMISSED AND THE PLAINTIFFS SHOULD BE REQUIRED TO SEEK INDIVIDUAL REMEDIES THROUGH FINRA ARBITRATION

Although not part of the current motion before the Court, to the extent that defendants' motion is granted and the class is decertified, the defendants will immediately move to compel mandatory and binding arbitration before FINRA. Under FINRA Rule 13200 and 13204, any employment dispute between a broker and a member firm is subject to mandatory arbitration. The only exception is that class actions and collective actions are excluded. See Suess Reply Dec. Ex. Q. Once the collective action is dismissed, the claims will be subject to mandatory FINRA arbitration. Gomez v. Brill Securities, Inc., 95 A.D.3d 32, 39, 943 N.Y.S.2d 400, 406 (1st Dept. 2012) ("until such time as class certification is denied, we cannot compel arbitration."); Coheleach v. Bear, Stearns & Co., Inc., 440 F.Supp.2d 338, 341 (S.D.N.Y. 2006) ("In signing the U-4 and Employment Agreement, plaintiff did not agree to arbitrate claims encompassed within a putative class action unless and until class certification is denied.").

If any claimants are no longer registered with FINRA, defendants would not object to maintain a FINRA arbitration on jurisdictional grounds.

Dated: New York, New York
       September 8, 2015

SCHRADER & SCHOENBERG, LLP
Attorneys for Defendants

By: _____
David A. Schrader, Esq. (DS-1765)
711 Third Avenue, Suite 1803
New York, New York 10017
(212) 986-4888